[Crim. No. 20051. Second Dist., Div. Four. June 15, 1972.]

In re RUTH H., a Person Coming Under the Juvenile Court Law. KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc., Plaintiff and Respondent, v. RUTH H., Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, John J. Gibbons, Laurance S. Smith and Elinor B. Levinson, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Norman H. Sokolow and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—Ruth H., a minor, appeals from an order (Welf. & Inst. Code, § 800) entered January 13, 1971, in a juvenile proceeding in the superior court held under Welfare and Institutions Code section 602, wherein appellant was adjudged to be a ward of the court and ordered placed under supervision of the probation officer in the home of her grandparents.

On August 12, 1971, the court entered an order reading, in part: "Case dismissed." The Attorney General asks us to dismiss the present appeal as being moot by virtue of the order of dismissal. We treat the so-called "dismissal" as more properly being an order of "termination" under Welfare and Institutions Code section 778 and the motion to dismiss the appeal is, in any event, denied. (*In re Richard D.* (1972) 23 Cal.App.3d 592 [100 Cal.Rptr. 351].)

The petition filed by the probation officer (Welf. & Inst. Code, § 650) charged appellant with possessing a restricted dangerous drug (sodium secobarbital) on December 2, 1970, in violation of Health and Safety Code section 11910. Appellant contends the drug capsules admitted into evidence against her should have been excluded, first contending she was arrested without probable cause. We disagree.

▆ The court found probable cause existed. On appeal "the only way such determination may be obviated is by a showing that there was no substantial evidence in support of it." (*People* v. *Morales* (1968) 259 Cal. App.2d 290, 295 [66 Cal.Rptr. 234].) Charles E. Jones testified that he was resident security agent at Washington High School. About 9:20 a.m. the morning of December 2, 1970, he saw appellant there in the car area where she received money from Deborah, another student, and handed Deborah something in her closed hand. He soon thereafter learned that Deborah could not "maintain her balance in the classroom" and he was asked to escort her to the nurse's office. In the nurse's office, at approximately 10 a.m. that morning, Deborah stated to him that "she had obtained a red" from appellant. Later on that morning, near the office of the girls' vice-principal, he saw another exchange of money and an object passed in the same manner between appellant and a girl named Sandra.

Appellant was asked to and did accompany Jones to the office of the girls' vice-principal. Jones stated to appellant and to the vice-principal what he had seen and what Deborah had told him. He advised appellant of her rights. Appellant denied that she had any pills at that time. When Jones asked if he could look in her pockets she got "very excited." Jones then placed her under arrest, handcuffed her, searched her pockets and found 28 "reds," or sodium secobarbital. Appellant stated she was "holding these pills for a girl by the name of Linda Smith."

A telephone call by the vice-principal brought two deputy sheriffs to the school. They were told appellant was walking down the street. One deputy followed and arrested her, the other entering the school and going to the office of the girls' vice-principal. When appellant was returned by the first deputy, the second deputy placed her under arrest for possession of dangerous drugs.

▆ Under Penal Code sections 830.4, subdivision (a)(13), and 836, Education Code section 15832 et seq. and Welfare and Institutions Code section 625, Jones was a peace officer authorized to make an arrest if he had "reasonable cause to believe that the person to be arrested has committed a felony." Jones had observed two transactions, the first involving Deborah, in which money was exchanged for "something" small enough to be concealed by appellant's hand. Between these two transactions Deborah was noted to be unable to maintain her balance. As stated in *People* v. *Hogan* (1969) 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868]: "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officer at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an

offense." The facts just recited seem sufficient to justify the trial court's conclusion that reasonable cause was shown. Appellant relies on *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704], but the facts are different here since we have not only suspicious action but, additionally, the subsequent unsteadiness of Deborah. Added to this is the statement Deborah made to Jones.

Appellant contends that Deborah was an untested informant, not shown to be reliable, and that her statement should be disregarded for that reason, citing *People* v. *Scoma* (1969) 71 Cal.2d 332, 338-339 [78 Cal. Rptr. 491, 455 P.2d 419]. In *Scoma,* the informant possessed narcotics and that fact, alone, was held insufficient to lend credence to his statement that he obtained the narcotics from a named person. It is an accepted rule that information given by an untested and therefore unreliable informant is insufficient, alone, to establish probable cause. However, if the information is corroborated in essential respects by other facts, sources or circumstances, it may nevertheless be sufficient. "Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of 'reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth . . . ." (*People* v. *Lara* (1967) 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202].) Deborah's reliability as an informant was corroborated by Jones' observation of her transaction with appellant and her inability to maintain her balance soon thereafter, giving the officer reasonable grounds to believe Deborah was telling the truth.

Jones testified during the hearing that he did not inform the police about Deborah's statement to him. Appellant's counsel stated to the court that Deborah was not mentioned in the police report and claimed "there is no way that the defense could find" her. On this basis counsel then moved "that the Court order the People to bring in Deborah and ask for a reasonable continuance for the People to comply with this order." The motion was denied. Appellant contends such ruling was erroneous, claiming Jones' testimony regarding Deborah's statement was a "surprise" to her. We disagree.

First, appellant relies chiefly upon *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847 [83 Cal.Rptr. 586, 464 P.2d 42]. By its own language (p. 851), however, its rule of disclosure relates to an informer who "is a material witness on the issue of guilt." Here, Deborah's further identification, if needed at all, related only to proof of probable cause and not to guilt or innocence. Once probable cause to arrest and search appellant was es-

tablished, her guilt rested upon other evidence, namely, the evidence that she possessed sodium secobarbital.

Second, the record does not establish that appellant and her attorney were unaware of the evidence. The court justifiably could believe Jones' testimony that: "I explained to the girl's Vice Principal *and to Ruthie Elaine* [H.] that I had observed her on two occasions and the one girl who stated to us she was under the Nurse's care at that time, that she had obtained a red from Elaine." (Italics added.) In the light of this evidence, which appellant ignores, no indisputable "surprise" was shown. Believing Jones' testimony, the court could conclude that appellant learned the identity of the informant and of her expected testimony long before the hearing, namely, on the very day of her arrest. Since appellant's motion was addressed to the court's discretion, an abuse of that discretion must be shown. (*People* v. *Buckowski* (1951) 37 Cal.2d 629, 631 [233 P.2d 912]; *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 859 [85 Cal.Rptr. 485]; *People* v. *Coleman* (1968) 263 Cal.App.2d 697, 706 [69 Cal.Rptr. 910].) None here appears; the motion for a continuance was properly denied.

■ Appellant contends the evidence is insufficient to show that the pills tested by the police chemist were the pills found in her pocket; in other words, that the chain of identity is incomplete. We disagree. On Jones' testimony the 28 pills he took from her pocket were, in his presence, placed in an envelope by the girls' vice-principal who marked the envelope with the date, time and with appellant's name. "And you turned the pills over to Deputy Gibel? THE WITNESS: Yes, sir." Deputy Sheriff Gibel testified that he and his partner went to the school in response to a call, arriving at 11:10 a.m. He saw the girls' vice-principal in her office; the evidence was in an envelope on her desk. He opened it and saw approximately 20-25 capsules. After his partner apprehended appellant and returned to school with her, Gibel then marked and tagged this evidence. The girls' vice-principal did not testify.

Appellant's sale to Deborah occurred at approximately 9:20 a.m. Deborah was brought to the nurse's office and made her statement there at 10 or 10:05 a.m. Appellant's second sale, to Sandra, occurred sometime thereafter, the approximate time not being shown. Following this, appellant was brought to the office where the girls' vice-principal "had quite a conversation with her," stating she would have to call for the sheriff, which she did. The pills were placed in an envelope. An inference that the deputy sheriffs arrived soon thereafter is justified; accordingly, the time which elapsed between the vice-principal's placing of the pills in the envelope and marking it and the appearance of deputy Gibel was but a short time. No evidence disclosed that the pills were tampered with or that opportunity existed for an interloper to do so.

Appellant bases her contention solely on Gibel's testimony that Jones was not in the office when Gibel picked up the envelope. She totally ignores Jones' testimony that he turned the pills over to Gibel. Even if Jones' testimony is ignored, however, Gibel further testified that Jones entered the office shortly after Gibel had opened the envelope. Presumably, Jones recognized the pills as being the same he had found. If they were not, it is reasonable to expect he would have said so. Indeed, corroboration of identity appears in the fact Jones counted 28 pills whereas Gibel estimated there were 20-25, a tally so close as to indicate the same pills were involved. *People* v. *Blackshear* (1968) 261 Cal.App.2d 65 [67 Cal.Rptr. 662], a decision of this division relied upon by appellant, is clearly distinguishable.

Last, appellant points to the fact no deputy district attorney was present at the hearing. Appellant argues that such situation required the juvenile court referee to act as both prosecutor and judge, and resulted in a cumulation of errors which the participation of a deputy district attorney would have prevented. We disagree with the contention as stated, first observing there is no showing of errors, cumulative or otherwise. Next to be noted is the fact that participation of a prosecutor, while it may be authorized, is not required. (Welf. & Inst. Code, § 681.) Third, the record does not indicate that the juvenile hearing referee was other than impartial in the questioning of witnesses. He did not take sides nor did he act as a "prosecutor." No evidence was presented by appellant, for which reason the referee was not called upon to cross-examine any witnesses or to object to questions asked of them on direct examination by appellant's lawyer.

It is true that counsel for appellant did object to evidence brought out by the referee and also made various motions; this required the referee to rule upon the objections and the motions. We thus are faced with a problem broader than that voiced by appellant, namely, is the due process clause shown to be violated in a hearing such as this, where a referee is called upon both to call and question witnesses and then to rule upon objections and motions made by the minor's attorney? It is observed that no objection was made to the referee's acting in a dual capacity or was a request made that he refrain from questioning the witnesses. Had such an objection been made, the referee could have called upon the probation officer present who quite properly could have been asked to question the witnesses. (*In re Steven C.* (1970) 9 Cal.App.3d 255, 263-266 [88 Cal. Rptr. 97].)

Proceedings in a juvenile court are said to be not criminal in nature. Welfare and Institutions Code section 503 states: "An order adjudging a

minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." Informality in such proceedings, in contrast to a formal trial or hearing, is desired to the end that no one may be cowed or confused by full legal panoply. Nevertheless, when a person within the juvenile court's jurisdiction (Welf. & Inst. Code, §§ 600, 602) does not acquiesce in the allegations of the petition but disputes them, the statute contemplates more formality. Thus, section 680 of the Welfare and Institutions Code reads in part: *"Except* where there is a contested issue of fact or law, the proceeding shall be conducted in an informal nonadversary atmosphere . . . ." (Italics added. And see: *In re Bacon* (1966) 240 Cal.App.2d 34, 45 [49 Cal.Rptr. 322].) Here there was a "contest" for, although the minor neither testified nor called witnesses, the admissibility and legal effect of the evidence produced was disputed.

Where a proceeding is held under Welfare and Institutions Code section 602, the case of *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370 [93 Cal.Rptr. 752, 482 P.2d 664] points to a significant aspect (p. 375): "Juveniles are entitled to the fundamental protection of the Bill of Rights in proceedings that may result in confinement or other sanctions, whether the state labels these proceedings 'criminal' or 'civil.' (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].)" And as said in *In re M.G.S.* (1968) 267 Cal.App.2d 329, 335-336 [72 Cal.Rptr. 808]: "Due process of law is a requisite to the constitutional validity of juvenile court proceedings in which alleged misconduct may result in a determination of delinquency and commitment to a state institution . . . ." (Also see: *In re Steven C., supra*, 9 Cal.App.3d at pp. 260-262.) Thus, under statute and Constitution, a minor brought into juvenile court for a contested proceeding under section 602 of the Welfare and Institutions Code, possesses certain rights to be protected although they are not, perhaps, the same where jurisdictional facts are undisputed.

 As will be noted in our ensuing discussion, two cases in point recently have been decided in this district by another division. These are *Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895 [97 Cal.Rptr. 158] and *Gloria M.* v. *Superior Court* (1971) 21 Cal.App.3d 525 [98 Cal. Rptr. 604], each involving a hearing held pursuant to Welfare and Institutions Code section 600, subdivision (a). Each case held it improper for a juvenile court referee to both call and question witnesses and then to rule on the outcome of the hearing. Where, as in our case, no partiality is shown and no evidence of unfairness or injustice appears (Cal. Const., art. VI, § 13), we are not necessarily in agreement with our sister division.

In *Lois R.* v. *Superior Court, supra,* a writ proceeding, similar although not identical problems were dealt with arising from a section 600 proceeding. The court there stated (p. 903): "Where the petition is contested, the parents are entitled to a fair hearing with an impartial arbiter, both in fact and in reality, and that means the provision of a referee who does not assume the functions of advocate." (Also see: *Gloria M.* v. *Superior Court, supra.*) The two cases mentioned recognize that a referee, like a trial judge, properly may question witnesses. We point out, however, that although an advocate may ask questions it does not necessarily follow that anyone who asks questions is an advocate. That syllogism is sophistic.

The court's conclusions in each of the two cases seemingly are based upon the fact that in each case the referee, from the outset, questioned the witnesses. If that analysis is correct, then the conclusionary distinction is artificial, being easily avoided by having the probation officer, whose presence may be required under statute (Welf. & Inst. Code, § 581), call the witness to the stand and undertake minimal preliminary questioning.

Nevertheless, we feel obligated to avoid conflict with another division of this district. Its two decisions stand unobliterated; we have no power of review over them. In the circumstances of our case, the referee not only presented the case filed by the probation officer but was required also to judge contested matters of fact and law. (*Estate of Buchman* (1954) 123 Cal.App.2d 546, 560 [267 P.2d 73].) The dual obligations thus placed on the referee violated, according to our sister division, appellant's constitutional right to procedural due process. Thus, persons appearing before the referee should have no basis to suspect him of partiality; appearances are important. As we have observed, no actual bias or partiality was exhibited by the referee.

*In re Murchison* (1955) 349 U.S. 133 [99 L.Ed. 942, 75 S.Ct. 623], is a case relied upon in *Lois R., supra.* A comment on that case in 69 Harvard Law Review 162, 163, *The Supreme Court, 1954 Term,* is pertinent: "The Court's concern for the separation of prosecutory from adjudicative power reflects the traditional emphasis on both the fact and appearance of judicial impartiality, particularly in criminal proceedings."

The order is reversed.

Files, P. J., and Jefferson, J., concurred.

On June 23, 1972, the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied August 9, 1972.