[Crim. No. 40440. Second Dist., Div. Five. Apr. 13, 1982.]

In re GUILLERMO M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GUILLERMO M., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jonathan B. Steiner, Chief Assistant State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STEPHENS, Acting P. J.—A petition before the juvenile court against appellant, a minor, for possessing a knife with a four-inch blade on public school grounds in violation of Penal Code section 626.10, a misdemeanor, was sustained. Appellant was made a ward of the court pursuant to Welfare and Institutions Code section 602 and placed on probation at home in his mother's custody with a number of conditions.

On appeal, appellant contends that he was illegally detained by the school's security agent and that consequently the knife seized by the agent and appellant's later statement admitting ownership of the knife should have been suppressed.

The relevant facts are that appellant was coming onto campus on December 16, 1980, when a security agent for the school district noticed unusually large bulges in the front pockets of appellant's pants. The agent questioned appellant as he walked by about the bulges, believing them to be knives by their size and outline. The agent knew that appellant had been in trouble before and associated with a gang. The agent was familiar with the type of knives in question.

Appellant responded that the bulges were pencils and kept walking. The agent then asked to see the pencils but appellant continued to walk,

feigning not to hear the agent. Appellant was stopped by the agent and patted down. The agent felt a knife in each pocket and removed them. Later that day, after being advised of and waiving his rights, appellant stated to a police officer that he owned the knives.

Appellant asserts that under *Dyas* v. *Superior Court* (1974) 11 Cal.3d 628 [114 Cal.Rptr. 114, 522 P.2d 674], the Fourth Amendment should apply to school security agents, as they act under color of state law and are state officials. If they are not held to be state officials, then appellant maintains that the Fourth Amendment should still apply under *People* v. *Zelinski* (1979) 24 Cal.3d 357, 366 [155 Cal.Rptr. 575, 594 P.2d 1000] as the agents perform "quasi-law enforcement" duties and bring "violators of the law to public justice."

We hold here that the security agent for the school was properly acting within the scope of his employment. *Dyas* and *Zelinski* are inapplicable to the instant case.

Under Education Code section 39670,[1] school agents are responsible for insuring "the security of school district personnel and pupils and the security of the real and personal property of the school district." Education Code section 39671 and Penal Code section 830.4, subdivision (g) confer "peace officer" status on the agents in carrying out their duties, giving them the authority to prevent violations of the law and to arrest where probable cause exists. (Pen. Code, § 836; *In re Ruth H.* (1972) 26 Cal.App.3d 77, 81 [102 Cal.Rptr. 534].) However, both Education Code sections 39670 and 39671 make clear that the agents are not to have general police powers and that these powers are supplementary to local law enforcement. (See 58 Ops.Cal.Atty.Gen. 363 (1975).)

Turning to the facts here, appellant was coming onto school grounds with bulges in both pockets. Experience and observation indicated to

---

[1]Education Code section 39670 provides in relevant part: "The governing board of any school district may establish a security department and employ ... such personnel as may be necessary to ensure the security of school district personnel and pupils and the security of the real and personal property of the school district and to cooperate with local law enforcement agencies in all matters involving the security of the personnel, pupils, and real and personal property of the school district. It is the intention of this provision that a school district security department shall be supplementary to city and county law enforcement agencies and shall under no circumstances be vested with general police powers."

the agent that knives were probably in appellant's pockets. Appellant's response that the bulges resulted from pencils and appellant's continued movement away from the agent entitled him to stop appellant and to pat him down. With his suspicions confirmed by feeling the knives in appellant's pockets, he could retrieve them. The agent properly exercised his responsibility in maintaining the security of the school's personnel and pupils. The knives and appellant's later statement of ownership were admissible.

*Dyas* concerned the issue of whether a housing authority patrolman was acting as a peace officer or private citizen in conducting a search in question. The defendant sought to have the patrolman classified as a peace officer so he could bring the search within the safeguards of the Fourth Amendment. (*Dyas* v. *Superior Court, supra*, 11 Cal.3d at pp. 631-632.)

The court found that the patrolman "was armed with a revolver, carried handcuffs, and had a two-way radio in his patrol car. Nor did he hesitate to use these indicia of authority in the manner in which they were intended. As we have seen, he radioed for a 'back-up unit,' ordered defendant to stand spreadeagled against a wall, conducted a pat-down search of defendant's clothing, drew his gun when defendant resisted, arrested and handcuffed defendant on finding contraband, and held him in custody in the patrol car until assistance arrived. Clearly these are the acts of a law enforcement officer." (*Dyas, supra*, at pp. 633-634.)

The court held that the patrolman was not acting as a private citizen but was exercising a public function and came under the constraints of the Fourth Amendment and article I, section 13, of the California Constitution. (*Dyas, supra*, at p. 636.)

In determining whether the patrolman's conduct fell within the purview of the Fourth Amendment, "The controlling question, therefore, is not the 'mission' of the governmental agency. ["Primary mission" to enforce the law was determinative in *People* v. *Wright* (1967) 249 Cal. App.2d 692, 694-695 [57 Cal.Rptr. 781].] Whether the exclusionary rule should be invoked depends instead on whether to do so would deter the particular governmental employee, and others similarly situated,

from engaging in illegal searches of private citizens. And that question, in turn, depends on such considerations as the training or experience, responsibilities or duties of the employee in question." (*Dyas, supra*, at p. 635.)

*Dyas'* concern was the protection of private citizens from illegal searches and seizures. Here the concern is with security agents maintaining the security of school personnel and pupils as well as school property. To maintain this security, more stringent regulation and authority is afforded over school children than would be allowed over adults. (*In re Thomas G.* (1970) 11 Cal.App.3d 1193, 1197-1198 [90 Cal.Rptr. 361].) We do not apply *Dyas'* reasoning to the activities of school children at a school.

It is also to be noted that *Dyas* does not purport to determine whether "'searches by private investigators and private police forces should be held subject per se to the commands of the Fourth Amendment on the ground that one of their basic purposes is the enforcement of the law.'" (*Dyas, supra*, at p. 633, quoting *Stapleton* v. *Superior Court* (1968) 70 Cal.2d 97, 100, fn. 3 [73 Cal.Rptr. 575, 447 P.2d 967].) *Dyas* was not meant for broad application requiring us to determine if school security guards fit within its standard.

The case at bar is also distinguishable from *Dyas* in that Education Code section 39670 emphatically states that school security agents are not to have general police powers. We therefore do not find that *Dyas* compels us to determine whether the school security guards come under the penumbra of the Fourth Amendment.

█ Even if we were to conclude that the security guard was a police officer, under the rules enunciated in *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957], the school security agent would have acted properly. The officer had articulable grounds to indicate that appellant was violating the law. His stopping the appellant and conducting the pat-down followed by the search would have been proper.

█ *People* v. *Zelinski, supra*, 24 Cal.3d 357, is not relevant to the instant case because there the Supreme Court "saw state involvement where security personnel, acting routinely in aid of law enforcement, exceeded the narrow, state-conferred citizen's search privilege; and

exclusion seemed an appropriate and effective way to deter such unlawful invasions within the growing private-security sector." (*In re Deborah C.* (1981) 30 Cal.3d 125, 131 [177 Cal.Rptr. 852, 635 P.2d 446], discussing *People* v. *Zelinski, supra*, 24 Cal.3d at pp. 366-368.) As discussed previously herein, the school agent was acting properly and was not exceeding the scope of his duties by stopping appellant.

Affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 9, 1982. Kaus, J., did not participate therein.