[No. B005751. Second Dist., Div. Seven. Sept. 4, 1985.]

In re ROBERT B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROBERT B., Defendant and Appellant.

764

■■■■■■
■■■■■■

■■■■■■
■■■■■■

**COUNSEL**

Robert D. Coppola, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Mark Alan Hart and Ernest Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—The juvenile court sustained a supplemental petition against Robert B., a minor, alleging that a previous disposition by the court had not been effective in his rehabilitation (Welf. & Inst. Code, § 777, subd. (a)) in that he was found in possession of marijuana on school grounds, thereby violating conditions of his probation. Robert appeals, asserting his initial detention and subsequent search by the school security officer were illegal; he was denied a fair hearing by denial of his motion for disclosure of informant; and there was insufficient foundation for identification of the contraband at the adjudication hearing.

I

FACTS

Oscar Cairo, a campus security officer at California High School, observed a group of five students, including Robert, near the science building on a school morning. He saw money being exchanged between two other students in the group. Because of past confrontations with Robert and others in that group involving possession of marijuana and being under the influence of marijuana, the officer decided to detain these students. He asked them to follow him to the office. As they proceeded through the hallway, he observed Robert pull a pack of cigarettes out of his right pocket and place it inside the sleeve of his jacket. Once inside the vice principal's

office, the students were asked to empty their pockets. A Marlboro cigarette box was recovered from Robert; the security officer opened the box and found 13 handrolled cigarettes inside. Subsequent testing established that the leafy substance inside the cigarettes was marijuana.

Robert had previously been declared a ward of the court (Welf. & Inst. Code, § 602) in 1981, and was ordered continued as such in 1983. As a result of the above incident, two petitions were filed with juvenile court: a petition under Welfare and Institutions Code section 602, alleging a violation of section 11357, subdivision (b), Health and Safety Code, and a petition under Welfare and Institutions Code section 777, subdivision (a) alleging that the previous disposition had not been effective. Robert denied the allegations. He moved for disclosure of informant and for suppression of evidence; the motions were heard and denied. At the conclusion of the adjudication hearing, the 602 petition was dismissed in the interests of justice, and the supplemental petition under section 777 was sustained. The court found the welfare of the minor required that custody be taken from his parents. The court further ordered that the *Ricardo M.* ([1975] 52 Cal.App.3d 744 [125 Cal.Rptr. 291]) time stayed from a 1983 proceeding be placed in full force and effect; that Robert remain a ward of the court; and that he be placed in the Camp Community Placement Program.

## II

### DISCLOSURE OF INFORMANT

Minor contends he was denied a fair hearing because the court denied his motion for disclosure of informant. The motion was based on the grounds that the informant was a material witness, and that he provided information relative to reasonable cause to arrest or search and was not a reliable informant. Declaration of minor's attorney alleged her belief that the informant gave to Mr. Cairo, the security guard, information that the minor was selling or offering to sell marijuana on the school campus; that Cairo knew this informant to have been involved in narcotics possession or arrests himself; and that the informant provided information that was used as the basis for reasonable cause to detain, search and arrest the minor. She incorporated by reference the police reports prepared in this matter.

The assertion that the information provided by the informant was relied upon by Mr. Cairo for reasonable cause to detain, search and arrest the minor was quickly dispelled at the hearing on the motion. Mr. Cairo testified that a day or two before this incident he had received information from an anonymous person about Robert and other students, and that he reported the information to the vice principal, who told him to "keep an

eye on the kids." However, Cairo stated he did not rely on any information received from anyone else for the purpose of detaining Robert. That information was not in his mind at all when he approached Robert that morning because he saw suspicious activities going on by the science building. His decision to detain Robert was based on his own personal observations and his prior dealings with Robert. We find the trial court's factual determination that Mr. Cairo did not rely on the informer's information in deciding to detain Robert is supported by substantial evidence; that is the limit of our review of the circumstances known or apparent to Mr. Cairo at the time of the detention. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 597-598 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) In light of the court's finding, the reliability of the informant could have no bearing on whether Mr. Cairo had reasonable cause to detain Robert.

■■■ As to the claim that the informer would be a material witness, "a defendant seeking to discover the identity of an informant bears the burden of demonstrating that, 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' [Citations.] That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration." (*People* v. *Garcia* (1967) 67 Cal.2d 830, 839-840, fn. omitted [64 Cal.Rptr. 110, 434 P.2d 366].) "The courts have indicated that the measure of the 'reasonable possibility' standard to be utilized in individual cases is predicated upon the relative proximity of the informant to the offense charged. . . . If the informer is not a percipient witness to the events which are the basis of the arrest, it is highly unlikely that he can provide information relevant to the guilt or innocence of a charge or information which rises from the arrest." (*People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 828-829 [187 Cal.Rptr. 296].) "[W]hen the informer is shown to have been neither a participant in nor a nonparticipant eyewitness to the charged offense, the possibility that he could give evidence which might exonerate the defendant is even more speculative and, hence, may become an unreasonable possibility." (*Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 420 [112 Cal.Rptr. 485].)

■■ Here the information was one or two days old, and the security guard didn't even remember what that information was. Although defense counsel argued that the informer might have seen Robert hand the cigarette box to someone else that morning, and that someone else might have put the marijuana in the box, or the informer could have had knowledge of who else had possession of the box and what was in the box, there was absolutely

no showing that the informer had any contact with Robert that day, or that the informer was either a witness to or participant in the suspicious incident by the science building. A defendant's showing must encompass more than speculation. (*People* v. *Green* (1981) 117 Cal.App.3d 199, 208 [172 Cal.Rptr. 582].) Robert presented only the bare, unsupported speculation that the informer may have been able to offer exonerating testimony, but failed to provide any evidentiary basis for raising this mere speculation to the "reasonable possibility" which would entitle him to disclosure. The trial court properly denied his motion for disclosure of informant.

### III

### DETENTION BY SCHOOL SECURITY GUARD

█ Appellant contends the school security guard acted without reasonable cause to detain him. █ As a school security agent, Mr. Cairo had the authority to prevent violations of the law (Ed. Code, § 39671; Pen. Code, § 830.4, subd. (g)), and to ensure the safety of school district personnel and pupils. (Ed. Code, § 39670; see *In re Guillermo M.* (1982) 130 Cal.App.3d 642, 645 [181 Cal.Rptr. 856].) Action taken by such an agent because he suspects the presence of a controlled substance on campus falls within the scope of this authority. (*In re Fred C.* (1972) 26 Cal.App.3d 320, 324 [102 Cal.Rptr. 682]; see also Ed. Code, § 48900, subd. (c).)

█ The concern of security agents in maintaining the security of school personnel and pupils permits more stringent regulation and authority over school children than would be allowed over adults. (*In re Guillermo M., supra,* 130 Cal.App.3d 642, 647; *In re Thomas G.* (1970) 11 Cal.App.3d 1193, 1197-1198 [90 Cal.Rptr. 361].) However, a school security agent does not have general police powers, and acts with power only supplementary to local law enforcement. (Ed. Code, §§ 39670, 39671.) █ "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation], to suspect the same criminal activity and the same involvement by the person in question." (*In re Tony C.* (1978) 21 Cal.3d 888, 893, fn. omitted [148 Cal.Rptr. 366, 582 P.2d 957].) █ Mr. Cairo testified that on the day of this incident, he was involved in a narcotics investigation at the school. He observed Robert in a group with four or five other students by the

science building, and saw money exchanged between two students in this group. He had had past confrontations with Robert and other students in that group involving possession and being under the influence of marijuana. These articulated facts support a reasonable suspicion that a transaction involving a controlled substance was taking place or was about to take place, and that Robert and the others in the group of five were involved in that activity. There was reasonable cause for the security officer to detain Robert.

IV

EXCLUSION OF EVIDENCE

■ Appellant next contends the trial court erroneously denied his motion to exclude the contraband as the search and seizure were in violation of his constitutional rights. ■ Article I, section 28, subdivision (d) of the California Constitution has abrogated a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal, Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].) Thus we look only to the federal law to determine the merit of appellant's argument.

■ The standards governing search of a student by a school official were recently set forth in *New Jersey* v. *T. L. O.* (1985) 469 U.S. —, — [83 L.Ed.2d 720, 734-735, 105 S.Ct. 733]: "We join the majority of courts that have examined this issue in concluding that the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness, under all the circumstances of the search. . . . Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." (Fns. omitted.)

■ Applying these guidelines to the facts of this case, we find the search conducted here was both justified at its inception and reasonable in its scope. Mr. Cairo detained Robert and the others in the group because

he suspected they might be in possession of a controlled substance. While Robert was walking to the office as part of the initial detention, Mr. Cairo saw him remove a cigarette box from his pocket and place it inside his jacket sleeve. This action, which could reasonably be interpreted as an attempt to hide the box, coupled with Mr. Cairo's suspicion that Robert was in possession of a controlled substance, provided adequate justification for inception of the search. Mr. Cairo instructed Robert to empty his pockets, removed the cigarette box from Robert's person, and opened the box, wherein he found the 13 handrolled cigarettes. Inasmuch as Robert was suspected of possession of a controlled substance, it was reasonable to search his pockets and the cigarette box he had apparently attempted to hide. This was done in the vice principal's office, in the presence of a second security guard. The record reveals no undue intrusion on the minor's person or excessive invasion of his privacy which would render the scope of the search unreasonable under these circumstances. The court did not err in denying motion to exclude this evidence.

V

CHEMICAL TEST FOR MARIJUANA

There is no merit to Robert's final contention that the prosecution failed to establish a foundation for admissibility of the scientific test used by the police officer to identify the contents of the handrolled cigarettes found in appellant's possession. Evidence of scientific tests is admissible when the technique has received general acceptance by recognized experts in the field; the determination of general acceptance is primarily a question of fact for the trial court, subject to an appellate court's determination that the trial court has not abused its discretion. (*People* v. *Marx* (1975) 54 Cal.App.3d 100, 109 [126 Cal.Rptr. 350, 77 A.L.R.3d 1108].) The *Frye* test (*Frye* v. *United States* (D.C.App. 1923) 293 F. 1013, 1014 [34 A.L.R. 145]) cited by the minor sets forth the foundation required for admissibility of expert testimony based upon the application of a *new* scientific technique; California courts have indeed adopted that test when faced with a *novel* method of proof. (See *People* v. *Kelly* (1976) 17 Cal.3d 24, 30 [130 Cal.Rptr. 144, 549 P.2d 1240].) The test utilized by the police officer in the instant case to identify the contraband, the Duquenois-Levine test, is not a new or novel test, but one of the conventional tests for identification of marijuana. (Annot., 75 A.L.R.3d 717, 722; see also *State* v. *Wind* (1973) 60 Wis.2d 267 [208 N.W.2d 357, 75 A.L.R.3d 709] for discussion of test.) The police officer explained the procedure for testing and interpreting results, and stated that he had personally performed the test on an average of 20 times each month for the past 4 years. We find no abuse

of discretion in the trial court's admission of the results of the Duquenois-Levine test.

Moreover, although Robert objected at trial to the expert qualifications of the police officer to perform and interpret the chemical test, a complaint not repeated in this appeal, he raised no objection to the general acceptance of the Duquenois-Levine test in the scientific community to establish that a substance is marijuana. ■■■ "[B]efore an appellate court will give consideration to an objection to evidence, the *specific ground* for its exclusion must have been clearly stated to the trial court. (Evid. Code, § 353, subd. (a).) This is particularly true where, as in the instant case, the objection easily could have been cured by the party offering the testimony if the specific reason for the objection had been stated to the trial court." (*People v. Dorsey* (1974) 43 Cal.App.3d 953, 960 [118 Cal.Rptr. 362], original italics.)

### DISPOSITION

The order is affirmed.

Thompson, J., and Johnson, J., concurred.