**LAUMATA LAFOGA FAIFAIESE, Appellant,**

v.

**AMERICAN SAMOA GOVERNMENT, Appellee.**

High Court of American Samoa
Appellate Division

AP No. 13-99

February 15, 2002

Before RICHMOND, Associate Justice, WARD,[*] Acting Associate Justice, ATIULAGI, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Appellant, Bentley C. Adams III, Asst. Public Defender
For Appellee, John W. Cassell, Asst. Attorney General

## OPINION AND ORDER

Appellant Laumata Lafoga Faifaiese appeals his conviction for Possession of a Controlled Substance, in violation of A.S.C.A. § 13.1022 (1992), amended by P.L. No. 25-34 (1998). Appellant petitions this Court to review three issues: (1) the Trial court's discretion to consider different sentencing options under the drug possession statute, A.S.C.A. § 13.1022; (2) the failure to suppress appellant's statements to the police; and (3) his guilt beyond a reasonable doubt.

### Standard of Review

■ An appellate court will not set aside a trial court's findings of fact in the absence of clear error. A.S.C.A. § 46.2403(b); *Toleafoa v. Am. Samoa Gov't*, 26 A.S.R.2d 20, 21 (App. Div. 1994). "[T]he test is not whether facts in the record may support a decision for an appellant, but whether sufficient evidence supported the trial court's decision." *Id.*

---

[*] Honorable John L. Ward II, Judge, District Court of American Samoa, serving by designation of the Secretary of the Interior.

## Factual and Procedural Background

On April 24, 1999, at about 9:30 a.m. two police officers, Lt. Leuma and Sgt. Clemens, responded to a call to the Department of Public Safety's Substation West in Tafuna from Alice Faifaiese ("Alice"), appellant's wife, reporting that she had been beaten up by appellant. The officers arrived in the village of Vaitogi and observed Alice approximately 10 minutes after the phone call had been made. She was crying and shaking. Her face was reddened and she told the officers that appellant had slapped her several times and ripped her shirt. While talking to Alice the officers observed the appellant emerging from his home. Lt. Leuma approached the appellant and asked him to remain with Sgt. Clemens while he continued to talk with Alice. Lt. Leuma, accompanied by Alice, then proceeded inside the appellant's home. Lt. Leuma asked and received permission to search the house from Alice.

Lt. Leuma entered the appellant's bedroom and saw what appeared to be a marijuana cigarette and appellant's passport in a plastic bag on a night table. Alice picked up and handed these items to Lt. Leuma. The cigarette was later tested and found to contain marijuana. Alice then pulled out a bag from under the bed. Inside the bag Lt. Leuma found seven ziplock baggies containing what appeared to be marijuana and a package of Zig-Zag rolling papers. Forensic testing established the substance inside the baggies to be marijuana.

Lt. Leuma then left the house and had appellant placed under arrest. Appellant was taken to Substation West and advised of his Miranda rights using the Samoan language printed departmental form. Appellant indicated that he understood his rights and was willing to waive them, both verbally and in writing at appropriate places on the form. Appellant, in his statement, said that Alice had "begged [him] to go and buy marijuana," and that he had "rolled four cigarettes and used three of them, and one cigarette remained and it is now in the hands of the police," and that these were "marijuana cigarettes."

Alice arrived at the police station that same day at approximately 12:20 p.m. and submitted a "voluntary statement" form to Sgt. Clemens. Sgt. Clemens interviewed her regarding the full details of the incident, and as a result an additional written statement was given by Alice, which included details of the assault and her consent to the search of the house. Sgt. Clemens then obtained an immediate arrest warrant for appellant.

The following day, April 25, 1999, and thereafter, Alice tried to have the case dropped. Later, at trial, Alice testified to engaging in a "war of words" with appellant and denied any physical contact. She also denied giving consent to Lt. Leuma to search the house, and claimed she went to

13

the police station against her will and that Sgt. Clemens made her write the additional written statement at the police station.

Appellant was charged on April 30, 1999 with possession of a controlled substance and assault in the third degree. The case was tried on August 18 and 19, 1999 before a jury. The jury found the appellant guilty of unlawful possession of the controlled substance of marijuana and not guilty as to the assault. On September 10, 1999, the Trial court denied probation as a sentencing option for a defendant convicted of possession of a controlled substance. On October 5, 1999, appellant was sentenced to five years in prison. On November 8, 1999, the Trial court denied appellant's motion for reconsideration or new trial. Appellant filed a notice of appeal on November 10, 1999, and an amended notice of Appeal on November 17, 1999. This appeal was heard on December 5, 2001.

## Discussion

A. Trial Court's Sentencing Options under A.S.C.A. § 13.1022

Appellant alleges error by the Trial court in its construction of the mandatory sentencing provision of A.S.C.A. § 13.1022, the possession of a controlled substance statute. He urges this Court to interpret the much amended sentencing language of this statute in light of the standard court dispositional options as outlined under A.S.C.A. § 46.1902, thereby allowing a person convicted under the possession of controlled substance statute to receive a term of conditional and revocable probation rather than a mandatory minimum term of imprisonment.

The meaning of a statute must be ascertained in light of its purpose. *Am. Samoa Gov't v. Gatoloai*, 23 A.S.R.2d 65, 68 (Trial Div. 1992). Absent contrary legislative intention, a statute should be interpreted according to its plain meaning. *Am. Samoa Gov't v. Alo*, 2 A.S.R.3d 91, 92 (Trial Div. 1998) (citing *United States v. Turkette*, 452 U.S. 576 (1981)). An interpretation should be avoided which construes a statutory provision to be meaningless or nugatory. *Id.* at 92 (quoting 73 AM. JUR. 2D *Statutes* § 249 (1974)).

The statute under which appellant was convicted, and is at issue before this Court, reads as follows in pertinent part:

**13.1022 Possession of controlled substance unlawful.**
(a) Except as authorized by the director, it is unlawful for a person to possess a controlled substance.
(b) A person who violates this section is guilty of a felony and shall be punished as follows:

14

(1) for a first offense, a fine not less than $5,000 and not more than $20,000 or not less than 5 years and not more than 10 years in prison, or both;

\* \* \*

There shall be no parole for a conviction under this section.

(c) The above penalties are mandatory.

The current wording of the statute was enacted in P.L. No. 25-34 (1998). The amendment doubled the maximum possible penalties for a first-time offense and explicitly denied parole to one convicted thereunder. These changes are reflective of a legislative intent to toughen the punishment for possession of controlled substances.[1]

Appellant submits that the statute allows the Court to punish a guilty defendant by imposing a fine and probation, with a term of detention, or such other appropriate provisions, as conditions of probation. Appellant

---

[1] The legislative history on this subject illustrates this intent. The crime of possession of a controlled substances was first enacted in P.L. 13-56 (1974), codified at 21 A.S.C. § 2553, and punishable as a misdemeanor by imprisonment for not more than one year or a fine of $500.00. Additionally, 21 A.S.C. § 2555 allowed for "deferred proceedings" treatment for first offenders. The crime of possession was upgraded by amendment in 1984 to a Class D felony for the first offense, a Class C felony for the second offense, and a Class B felony for a third or more offenses. P.L. 18-40 (1984), codified at A.S.C.A. § 13.1022. Deferred proceedings, however, remained permissible in 1984, codified at A.S.C.A. § 13.1024.

The Legislature did away with deferred proceedings by repealing A.S.C.A. § 13.1034 in P.L. 25-19 (1998). The Legislature made the following findings in the preamble to P.L. 25-19:

Some 23 years ago, the Legislature did not realize that possession of controlled substances such as marijuana can threaten the health and natural attributes of our children. In 1974, our lawmakers were conceived with the notion that mere possession of a small amount of illegal drugs could affect just the user. Present day possession of controlled substance no longer consists of a small amount but contains a large quantity and are dispersed regularly to our people, and has found its way to our younger population. A serious threat to the well being of our children is clearly manifested.

The preamble then concluded:

The "deferred proceedings" provisions of section 13.1024 has definitely outlived its purpose if there was one. *The Court must proceed to enter its judgment and impose sentencing regularly pursuant to 13.1022 A.S.C.A.* [Emphasis added.]

points to the use of the disjunctive "or" and "or both" in the statute to justify this interpretation and to allow the application of A.S.C.A. § 46.2203 (defining eligibility for probation) and A.S.C.A. § 46.2206 (allowing detention as a condition of probation).

The sentencing court's general sentencing options under A.S.C.A. § 46.1902 for criminal case disposition are limited to "any *appropriate* combination" (emphasis added). The language "appropriate" as used in that section limits the trial court's dispositional options in criminal cases arising under A.S.C.A. Title 46 to those term limits, definitions, and classifications which generally apply to most criminal cases. It is true that where not otherwise specifically directed by the Legislature in the penalty enactments of Title 46, the sentencing court may, in its sound discretion, find that an appropriate disposition of a particular case should involve probation rather than only imprisonment. *See* A.S.C.A. § 46.1902.

■ However, the instant case falls outside of this general dispositional approach because the possession statute is codified outside of Title 46. The possession statute's specific penalty provisions include a required minimum sentence of imprisonment without parole and a requirement that such penalties are mandatory. With respect to "appropriate" dispositional treatment of non-Title 46 convictions, A.S.C.A. § 46.1901(a) specifically provides:

> **46.1901 Authorized Dispositions**
> (a) Every person found guilty of an offense, whether defined in this title or in the American Samoa Code Annotated in accordance with the classifications in this chapter, shall be dealt with by the court in accordance with the provisions of this chapter, except that for offenses defined outside this title and not in accordance with the classifications of this chapter and not repealed, the term of imprisonment or the fine that may be imposed is that provided in the statute defining the offense.

An "appropriate" disposition of a conviction under the possession statute therefore requires the sentencing court to impose at least a mandatory minimum fine of $5,000.00 or a mandatory minimum prison term of five years, or both. The prison term is to be served without parole, as specified by the Legislature. Reiterating its intent that at least a substantial minimum fine or prison term be imposed, the Legislature concludes the penalty section of that statute with "(c) The above penalties are mandatory."

The legislative intent and the language of the qualifying and applicable statutes clarify the language utilized in this drug possession statute. The

result makes it sufficiently clear to impart a specific and substantial limitation upon the sentencing court's general dispositional options under A.S.C.A. § 13.1022. Under this statutory scheme, probation is not an "appropriate" disposition. *See also* Preamble to P.L. 25-19 (1998).

B. Evidentiary Admission of Appellant's Statements

Appellant argues that his statements to the police were improperly admitted at trial. This argument is based upon the assertion that appellant was subject to an illegal warrantless arrest and that, therefore, the fruits of that unlawful arrest are excludable. *See Costello v. United States*, 365 U.S. 265 (1961).

■ The exclusionary rule allows the suppression of evidence obtained through the use of unreasonable searches and seizures. *Mapp v. Ohio*, 367 U.S. 643 (1961). The Revised Constitution of American Samoa, Article 1, Sec 5, prohibiting unreasonable searches and seizures, tracks the language of the Fourth Amendment to the United States Constitution but then includes the following:

> Evidence obtained in violation of this section shall not be admitted in any court.

■ This last sentence explicitly entrenches the exclusionary rule in the American Samoa Constitution. *Am. Samoa Gov't v. Samana*, 8 A.S.R.2d 1, 3 (Trial Div. 1988). This provision is implemented through A.S.C.A. §§ 46.0801-.0807. To arrest a suspect, an arrest warrant is generally required, however, the statute describes a number of situations in which a warrant is unnecessary. *See Am. Samoa Gov't v. Gotoloai*, 23 A.S.R.2d 65, 67 (Trial Div. 1992). One of these instances is when there is a felony committed in the presence of the arresting officer. A.S.C.A. § 46.0805(1). Oddly, appellant does not contest the warrantless search of the premises where the drugs were found. Regardless, it would have been a fruitless claim as the police had the voluntary and intelligent consent of appellant's wife Alice, a person with apparent rights to use or occupy the property equal to those of the appellant. *See United States v. Matlock*, 415 U.S. 164, 171 (1974); *Frazier v. Cupp*, 394 U.S. 731, 740 (1969).

With the consent to the warrantless search being judged to surpass the objective standard required in such an instance, *see Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), the police in this matter were properly and legally inside the appellant's residence. When Alice gave the narcotics to the police officer, he was immediately presented with the commission of a felony, possession of a controlled substance, in violation of A.S.C.A. § 13.1022. Therefore, under the exception of A.S.C.A. § 46.0805(1), the

appellant's warrantless arrest was proper and his statements once in custody were not "fruit of the poisonous tree." Rather, they were voluntary and informed statements relevant to the police investigation, and were hence properly admitted into evidence by the Trial court.

■ The Government puts forth two further procedural arguments to justify the denial of suppression of appellant's statements to police. First, that the appellant failed to provide the Appellate Division with an adequate record permitting fair and adequate review under A.C.R. 10(b)(2). Second, that the appellant's motions to suppress his statements were correctly denied as being untimely under T.C.R.Cr.P 12(b)(3). These claims are both, in our opinion, meritorious. However, with this claim being denied on the merits, we will not delve any deeper into these matters.

## C. Sufficiency of the Evidence

■ The evidence presented at trial was sufficient to support a finding of guilt beyond a reasonable doubt. Beyond a reasonable doubt should not be treated as an impossible hurdle. *See generally Am. Samoa Gov't v. Uo,* 4 A.S.R.2d 14 (Trial Div. 1987) (burden of proof beyond a reasonable doubt in criminal cases does not prohibit trier of fact from drawing inferences from the evidence). If, upon review of the facts, it is determined that a rational trier of fact could find guilt beyond reasonable doubt, the verdict must stand. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

Appellant claims reversible error in two particulars. First, he points out that he was charged with possessing a controlled substance "on or about March 21, 1999," but convicted of possessing the substance "on or about April 24, 1999." Appellant makes a technically correct assertion. The information filed against appellant does allege in Count I commission of the offense of possession of a controlled substance "on or about March 21, 1999."

However, Count II of the information, charging a related misdemeanor offense, lists "[o]n or about April 24, 1999," as the date of incident. Furthermore, the criminal complaint that initiated the prosecution against appellant, as filed in District Court on April 26, 1999, listed "[o]n our [sic] about April 24, 1999," as the date the alleged unlawful possession occurred. Relevant testimony and statements of counsel at trial all reflect the "April 24, 1999," date of when the charged offense occurred.

Appellant has provided no threshold showing of prejudice by what the record reveals as a typographical error in the information. No objections are apparent in the record as to the relevancy of testimony concerning

18

appellant's actions on or about April 24, 1999, and appellant did not otherwise raise and preserve this issue at trial. This Court may not presume prejudice where the appellant has failed to demonstrate any.

Appellant next challenges admission of Sgt. Clemens' testimony as an expert and the introduction of the results of his forensic analysis of the substance seized as reversible error. Admission of this evidence was not reversible error.

 The determination whether an expert witness has sufficient qualifications to testify is a matter within the trial court's discretion. *United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993). A trial court's decision to admit expert opinion is reviewed for abuse of discretion. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *United States v. Burdeau*, 168 F.3d 352, 357 (9th Cir. 1999); *United States v. Cruz*, 127 F.3d 791, 800 (9th Cir. 1997); *United States v. Webb*, 115 F.3d 711, 713 (9th Cir. 1997); *United States v. Ortland*, 109 F.3d 539, 542 (9th Cir. 1997); *United States v. Cordoba*, 104 F.3d 225, 229 (9th Cir. 1997). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997); *Int'l Jensen, Inc. v. Metrosound U.S.A. Inc.*, 4 F.3d 819, 822 (9th Cir. 1993). Under the abuse of discretion standard, a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors. *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (sanctions); *Solomon v. N. Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1988) (motion to amend complaint); *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996) (sanctions); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996) (denial of attorney's fees).

The standard for admission of expert testimony is governed by T.C.R.Ev. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

 This rule mirrors the language of Fed. R. Evid. 702, and as such on this issue this Court will apply the law as applicable to a federal trial. The application of Fed. R. Evid. 702 is controlled by the U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993), which established the test to be employed by a trial

19

judge in deciding on the admission of expert scientific testimony and evidence.

 Under the *Daubert* test, the trial judge is to decide whether the evidence offered both rests on a reliable foundation and is relevant to the task at hand. *Id.* at 590. The reliability standard comes from the Rule 702 requirement that an expert's testimony pertain to "scientific . . . knowledge," since the adjective "scientific" implies a grounding in the methods and procedures of science, and the term "knowledge" connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds. *Id.* The Rule then examines relevance by insisting that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue," which therefore requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Id.* When assessing the reliability of any expert's testimony, not just a scientific expert's, the trial court may consider the *Daubert* factors to the extent relevant, which will depend upon the nature of the issue, the expert's particular expertise and the subject of his testimony. *Kumho Tire*, 526 U.S. at 151.

 This inquiry is a flexible one. *Daubert*, 509 U.S. at 594. The Trial court was within its discretion to admit Sgt. Clemens as an expert witness, to allow his expert opinion testimony, and to include the results of the Duquenois-Levine Field Test. Sgt. Clemens had a particular expertise in this field and testing procedure as demonstrated through his over six years of experience in narcotics investigations, having been involved in over sixty narcotics cases, having been trained in visual, microscopic and chemical identification of marijuana by the Drug Enforcement Administration, U.S. Customs, and the Federal Bureau of Investigation, and having been previously admitted by the High Court as an expert in forensic analysis. These factors establish the reliability of the testimony. Therefore, the trial judge's determination allowing his expert testimony was well within the granted discretion under T.C.R.Ev. 702 and the *Daubert* test.

 As to allowing the results of the Duquenois-Levine Field Test that was conducted by Sgt. Clemens, the Trial court was again within its discretion. The inquiries to determine whether a technique qualifies as scientific knowledge under *Daubert* are whether the technique has been tested, whether it has been subject to peer review and publication, the known or potential rate of error, and the old common law test of general acceptance.[2] *Daubert*, 509 U.S. at 593-94. The trial judge is granted

---

[2] Evidence of scientific test is admissible when the technique has received general acceptance by recognized experts in the field, with the

20

wide latitude in making this determination. *Kumho Tire*, 556 U.S. at 152. The Duquenois-Levine test is one of the conventional tests for the identification of marijuana. *See In re Robert B.*, 218 Cal. Rptr. 337, 342 (Cal. Ct. App. 1985). It has been used by law enforcement for many years, has been tested for reliability and is the subject of scholarly review.[3] While the test is not completely free of error and its use has been a matter of scholarly dispute, neither of these factors rises to the level of being an abuse of discretion for its acceptance by the trial judge. Further, Sgt. Clemens performed visual and microscopic tests on the substance, which in conjunction with the forensic analysis results rises above the rational trier of fact standard on appeal.

Appellant's final claim also fails as there was sufficient evidence the Faifaiese was knowingly in possession of marijuana. Appellant's claim that the evidence fails to prove that the substance seized was in fact marijuana does not overcome a clear error standard. The substance seized was subject to forensic analysis and the results of this analysis were admitted through the testimony of a Sgt. Clemens. Appellant's claim that what was found was only Tetrahydrocannabinol ("THC") and not marijuana is a distinction this court does not accept. *See United States v. Barton*, 995 F.2d 931, 936 (9th Cir. 1993) (including male marijuana plants that do not contain THC as drugs in order to calculate a defendant's offense level under the Sentencing Guidelines). Additionally, A.S.C.A. § 13.1006 includes THC as a controlled substance prohibited under the statute, possession of which is therefore a crime. The evidence as present at trial was sufficient to support the jury's findings of fact.

## Conclusion

For the reasons stated above, appellant's conviction and the judgment are affirmed.

It is so ordered.

---

determination of general acceptance being a question of fact for the trial court, which we review on an abuse of discretion standard, as above. *People v. Marx*, 54 Cal. App. 3d 100, 109 (Cal. Ct. App. 1975).

[3] *See, e.g.*, comments in Stein, Laessig, and Indriksons, *An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of Their Analysts*, WIS. L. REV. 727 (1973); Fochtman and Winek, *A Note on the Duquenois-Levine Test for Marijuana*, 4 CLINICAL TOXICOLOGY 287 (1971); *see also State v. Wind*, 208 N.W.2d 357, 360-61 (Wis. 1973).