[No. F010809. Fifth Dist. Sept. 13, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID PENA REYES, Defendant and Appellant.

[No. F012442. Fifth Dist. Sept. 13, 1990.]

In re DAVID PENA REYES on Habeas Corpus.

1220

COUNSEL

Sara H. Ruddy, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney

General, Joel Carey and Laura I. Heidt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—We hold here that defendant's pants and shirt, removed while he took a shower in a closed, private bathroom, remained an extension of his person, rather than becoming a part of the premises, and were not covered by a warrant authorizing search of the premises.

Defendant[1] David Pena Reyes was convicted by jury verdict of a single count of possession of heroin for the purpose of sale (Health & Saf. Code, § 11351) and several enhancement allegations immaterial to the issues presented here. He was sentenced to an eight-year prison term.

On appeal defendant contends the trial court erred in denying his pretrial motion to suppress evidence. He also filed a petition for writ of habeas corpus claiming ineffective assistance of counsel. Because we conclude the suppression motion should have been granted, we will reverse the judgment and deny the petition as moot.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Detectives Archie Lee Scott and R. D. Davis of the Bakersfield Police Department participated in the execution of a search warrant on premises at 930 Exchange Street on April 15, 1988. Defendant's motion to suppress items obtained in that search was presented to the court below with very little evidence. A single page from Detective Davis's report showed that Davis heard running water in the bathroom, announced himself to be a police officer, and demanded entry. When no permission was given, he and Detective Scott entered and observed defendant in the shower. Scott ordered defendant out of the shower. As he stepped out, "[defendant] picked up a shirt that he was going to put on and, as he started to put it on, Detective Scott grabbed it, went through the pockets and located the heroin. [Defendant] was told to put on a pair of pants, at which time he picked up a pair of pants, that were laying [sic] with the shirt, and put them on. Upon searching the pants, the U.S. currency was located."

---

[1] Because he appears in this court both as appellant and as petitioner in an original proceeding, we will refer to Mr. Reyes by his designation in the lower court.

[2] Due to the limited nature of the issue we consider on appeal, we need recite only evidence presented at the suppression hearing.

In the opposition papers, the prosecutor included a statement of facts generally similar to those included in the police report. The prosecutor, however, added reference to an "unknown subject" who "ran toward the rear of the residence" when the officers approached the house. No evidence was cited to support the reference to the "unknown subject."

At the hearing, the parties stipulated that the court could take judicial notice of the search warrant and affidavit. The affidavit, signed by Detective Davis, indicates a confidential reliable informant told Davis that a Hispanic male named "Santio," age 20 to 23, was a trafficker of phencyclidine (PCP), and that the informant recently observed "Santio" in his residence at 930 Exchange Street in possession of crystal PCP cigarettes and grams of crystal PCP. The search warrant authorized search of the residence as well as the person of "Santio" for PCP and paraphernalia associated with the preparation of PCP for sale.

No evidence was submitted regarding the reason for defendant's presence at the residence when the warrant was executed.

The court below denied the suppression motion and ruled the search was valid under the warrant for two separate reasons. First, the court relied on *People* v. *McCabe* (1983) 144 Cal.App.3d 827 [192 Cal.Rptr. 635] to find that, although defendant's reach for the shirt was an assertion of ownership, "the police can assume all personal property in a residence is the property of a resident, and therefore subject to search as a possible repository of items sought." Second, the court held that "since running in the residence had been heard before entry, the police could conclude an opportunity had existed for someone to conceal narcotics in, inter alia, defendant's clothing, which were not then being worn by defendant."

## DISCUSSION

### I. *The Lower Court's First Reason for Denying the Suppression Motion*

■ We begin our analysis with this statement of the United States Supreme Court: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a

search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *(United States* v. *Ross* (1982) 456 U.S. 798, 820-821, fns. omitted [72 L.Ed.2d 572, 591, 102 S.Ct. 2157].)

In stating its first reason for denying the suppression motion, the court below relied solely on *People* v. *McCabe, supra. McCabe,* and the earlier decision upon which it relied, *People* v. *Saam* (1980) 106 Cal.App.3d 789 [165 Cal.Rptr. 256], are consistent with the principles expressed by the United States Supreme Court in *United States* v. *Ross, supra,* in holding that officers executing a search warrant for fixed premises may lawfully search personal effects on the premises when the personal effects are "plausible repositories of contraband." (144 Cal.App.3d at p. 830.) In *Saam* the personal effect was a locked toolbox belonging to a resident of the premises searched. In *McCabe* the personal effect was a purse belonging to a nonresident.

In *McCabe,* the officers executing a warrant found a purse in one room and two women in another room; one of the women was known to be a resident of the home being searched. The court found it reasonable to assume, in the absence of indicia to the contrary (such as an assertion of ownership by the other female), that the purse belonged to the resident and therefore was within the scope of the premises search warrant.

The *McCabe* court found a complete "absence of any facts to suggest that the police knew that [McCabe] owned the purse . . . ." (144 Cal.App.3d at p. 831.) This finding was expressly based in part on the fact that McCabe "did not have possession of the purse at the time the police entered the house, nor did she subsequently take possession of the purse." *(Ibid.)* In fact, McCabe and the purse were found in different rooms.

The lower court somewhat overstated the holding in *People* v. *McCabe, supra.* The *McCabe* court did not hold that "the police can assume all personal property in a residence is the property of a resident, and therefore subject to search as a possible repository of items sought." Rather, it held that in *ordinary* circumstances the assumption may be justified. The *McCabe* opinion goes on to state that "[i]f the police have actual knowledge that the property which is searched belongs to a nonresident, . . . they may not, as a general rule, rely on the authority conferred by a search warrant to conduct a warrantless search of the nonresident's property, even though it is

a plausible repository of contraband." (*People* v. *McCabe, supra,* 144 Cal.App.3d at p. 830.)

■ Because the questioned search in this case occurred during execution of a search warrant, defendant had the burden of proving the search was beyond the warrant's scope. (See, e.g., *United States* v. *Taylor* (6th Cir. 1989) 882 F.2d 1018, 1032-1033.) ■ Defendant offered no evidence showing he was not a resident of the searched premises. Even if the facts support an inference of Reyes's nonresidence, there is simply no basis for concluding that the officers had actual knowledge of defendant's status. On the contrary, his use of the shower leads one to suspect he lived at the house. The trial court expressly noted this fact in its ruling denying the suppression motion. Thus, defendant failed to meet his burden of proving facts bringing him within the exception noted by the *McCabe* court. If the case turns solely on defendant's apparent status as a resident of the house, the lower court's ruling should be sustained.

■ Defendant, however, argues the search of his shirt and pants was a personal search, not a premises search, and was not authorized by the warrant. He contends *McCabe* is inapplicable because that case dealt with a premises search. The distinction urged by defendant may be critical. The warrant authorized only a search of the premises and of one man. Defendant was not the man named in the warrant, nor does the evidence suggest in any way that the police thought he was named in the warrant when they searched his clothes.[3]

■ A warrant to search premises "cannot normally be construed to authorize a search of each individual in that place." (*Ybarra* v. *Illinois* (1979) 444 U.S. 85, 92, fn. 4 [62 L.Ed.2d 238, 246, 100 S.Ct. 338].) ■ The affidavit offered no facts constituting probable cause to search any person other than "Santio." Thus, if the search was of defendant's person, rather than of the described premises, it was outside the warrant's scope regardless of his status as a visitor or resident.

We are not aware of any California cases defining the boundary between premises and personal searches. The issue, however, has been considered in other jurisdictions.

There are at least two approaches to this question in federal case law. The first may be characterized as the "bright line" approach, and is typified by *United States* v. *Johnson* (D.C. Cir. 1973) 475 F.2d 977. There the police, in

---

[3] "Santio" was described in the affidavit as being "20 to 23 years" of age. According to his probation officer's report, defendant was 41.

executing a narcotics search warrant for the apartment of one Stewart, found Johnson seated on a couch with her purse on the table in front of her. A search of the purse was upheld as being within the scope of the warrant, the Court of Appeals ruling that the purse "was not being 'worn' by appellee and thus did not constitute an extension of her person so as to make the search one of her *person*. [Citations.] The invasion of appellee's privacy was therefore of a lesser degree than if she had been subjected to a search of her clothing or of objects being held by her." (475 F.2d at p. 979.)

Thus, under *Johnson* and like cases, the court may draw a "bright line" between personal and premises searches based on physical contact with the receptacle searched.

The Supreme Court of Pennsylvania recently engaged in a similar analysis in *Com.* v. *Reese* (1988) 520 Pa. 29 [549 A.2d 909]. Police officers executed a search warrant describing an apartment and a female occupant, Cosgrove. They found Cosgrove and her male companion, Reese, in the kitchen. A leather jacket was draped over a chair about four feet from Reese. An officer searched the jacket and found contraband. The Pennsylvania Supreme Court upheld the search, expressly noting "a constitutional difference between the search of a visitor's person and the search of a visitor's personal property (property which is not on the person) located on premises where a search warrant is being executed . . . ." (549 A.2d at p. 910.) Throughout its opinion the court emphasized that the jacket was not "on" or being worn by the defendant when it was searched, finally concluding that "[t]he jacket was not being worn by Reese and therefore, cannot be characterized as an extension of his person so as to propel its search into a search of Reese's person." (549 A.2d at pp. 911-912.)

A less rigid approach is suggested by the second line of cases, an early example of which is *United States* v. *Micheli* (1st Cir. 1973) 487 F.2d 429. There the police obtained a warrant to search a printing business for evidence of counterfeiting. During a pre-execution stakeout, the police saw Micheli, a co-owner, enter with a briefcase. They subsequently served the search warrant, and among the locations searched was the interior of the briefcase, found under a desk. Incriminating evidence was found inside, as was evidence establishing Micheli's ownership of the briefcase.

The *Micheli* court recognized that the problem before it centered on the nature of the search as one of a location or of a person. It refused, however, to apply case law relying on physical possession as the determinative factor.

"[W]hat is a personal search? A search of clothing currently worn is plainly within the ambit of a personal search and outside the scope of a

warrant to search the premises. But a personal effect such as a briefcase, carried on to the premises and then tucked under a desk, does not clearly fall either within the realm of a personal search or a search of the premises." (487 F.2d at p. 431.)

Having so stated the problem, the *Micheli* court proposed a solution.

"In determining to what extent a recognizable personal effect not currently worn, but apparently temporarily put down, . . . falls outside the scope of a warrant to search the premises, we would be better advised to examine the relationship between the person and the place . . . . It should not be assumed that whatever is found on the premises described in the warrant necessarily falls within the proper scope of the search; rather, it is necessary to examine why a person's belongings happen to be on the premises. '[T]he Fourth Amendment protects people, not places', *Katz* v. *United States*, 389 U.S. 347, 352, . . . (1967), and the protective boundary established by requiring a search warrant should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be." (487 F.2d at pp. 431-432.)

The *Micheli* court appeared to focus on the individual's expectations.

"[T]he problem we are discussing is a narrow one, falling between two primary rules, one permitting searches of premises, the other prohibiting searches of person. In this interstitial area where the literal application of either primary rule would frustrate the legitimate interests of either the police or the individual, *we think it more consistent with the Fourth Amendment that searches of the personal effects of visitors to premises be appraised by reference to the reasonable expectations of privacy which visitors bring to premises* rather than by attributing significance to a literal coup de main." (487 F.2d at p. 432, italics added.)

The *Micheli* court found the search in that case valid. There Micheli, a co-owner of the business for which the search warrant was issued, was "not in the position of a mere visitor or passerby . . . . He had a special relation to the place, which meant that it could reasonably be expected that some of his personal belongings would be there." (487 F.2d at p. 432; see also *U.S.* v. *Giwa* (5th Cir. 1987) 831 F.2d 538, and *U.S.* v. *Gray* (1st Cir. 1987) 814 F.2d 49.)

Because of the protean variety of factual situations which could present a "premises versus personal search" issue, any attempt to formulate a rule for all cases is exceedingly difficult. We will not do so because we are satisfied that wherever the dividing line is finally drawn, the search here clearly falls on the "personal" side under either of the two lines of cases discussed.

Defendant, alone in a closed bathroom, removed his primary clothing (pants and shirt) in the most private of circumstances. He placed the clothing within reach while showering. Clearly he never intended or contemplated that anyone else should have access to his clothing while it was removed from his body. He picked up the shirt to put it on as soon as he stepped from the shower. Under those circumstances we hold that the clothing was an extension of defendant's person rather than simply an article of personal property on the premises. Accordingly, the search of defendant's shirt and pants was beyond the warrant's scope.

We limit our holding to the narrow issue presented—whether the warrant to search the premises covered defendant's clothing. Under the facts the officers may have been justified in conducting a warrantless patdown search for weapons. (See *People* v. *Thurman* (1989) 209 Cal.App.3d 817, 823 [257 Cal.Rptr. 517].) Defendant concedes as much. The actual search, though, was not a patdown. According to Detective Davis's report, Detective Scott initially searched inside defendant's pockets. The slender factual record before us does not suggest any prior "sensorial perception" by the officer that defendant had drugs in his pockets. (*People* v. *Valdez* (1987) 196 Cal.App.3d 799, 804-808 [242 Cal.Rptr. 142].) Nor does it suggest any other grounds justifying a warrantless interior search of defendant's clothing.

II. *The Lower Court's Second Reason for Denying the Suppression Motion*

■ As noted *ante*, the court below provided an alternative basis for its ruling on the suppression motion, that "since running in the residence had been heard before entry, the police could conclude an opportunity had existed for someone to conceal narcotics in, inter alia, defendant's clothing, which were not then being worn by defendant."

We do not reach the merits of the lower court's ruling for the simple reason that it has no factual support whatsoever. The only evidence presented by either side for purposes of the motion hearing consisted of the affidavit and search warrant, neither of which could refer to events occurring after their drafting; the return to the warrant, which merely lists evidence seized on the premises and does not describe the events surrounding execution of the warrant; and the single page of the arrest report attached to the moving papers, which makes no reference to anything running save the water in the shower.

The only reference anywhere before the lower court to someone running was in the People's opposition papers, wherein it is stated that "As the

officers approached the residence, an unknown subject ran toward the rear of the residence." No evidence is offered to support or explain this assertion, which is in itself ambiguous as to whether the subject was running inside or outside the house.

Although we give great deference to the factual findings of the court hearing the suppression motion, those findings still must be supported by substantial evidence. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

We conclude the motion to suppress should have been granted and the judgment must be reversed. The issues raised by the petition are thus moot and we do not reach them.

### DISPOSITION

The judgment is reversed. The petition is denied.

Best, Acting P. J., and Brown (G. A.), J.,* concurred.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.