[Nos. G012799, G013084. Fourth Dist., Div. Three. June 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN CONSUEGRA et al., Defendants and Appellants.

**COUNSEL**

Marcia C. Levine and Martin Nebrida Buchanan, under appointments by the Court of Appeal, Fern Laethem, State Public Defender, Gary D. Garcia, Deputy State Public Defender, and Joseph F. Walsh for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

WALLIN, J.—Juan Consuegra, Esther Consuegra, Victor Hugo Mejia and Ramon Eugenio Calderon appeal their convictions for conspiracy to possess

cocaine for sale and possession of cocaine for sale, with quantity enhancements, contending: (1) the trial court erred by instructing the jury that possession for sale requires only knowledge that the drugs would be sold eventually by someone else; and (2) there was insufficient evidence of substantial involvement to support the quantity enhancements.[1] Juan Consuegra also contends there was insufficient evidence as to the substantive charges and the court erroneously denied his motion to disclose the identity of an informant. We affirm.[2]

On November 4, 1991, police surveilled a condominium in a security complex on Golden Springs in Diamond Bar.[3] They saw Calderon and Mejia drive away in an Oldsmobile to a Lucky's market, where Mejia made a call from a public telephone while Calderon walked back and forth. About 10 minutes later Juan Consuegra walked up, shook hands with Calderon and talked with him and Mejia. Juan entered the store and the two others departed, Calderon driving the Oldsmobile and Mejia driving a pickup truck with a camper shell. They drove in tandem to a point where Calderon headed for the condominium and Mejia drove on.

Mejia drove the pickup to a Sav-On drugstore in Placentia and parked in the lot. He used a pay telephone and left about 20 minutes later, using countersurveillance driving techniques to return to the condominium. In about 20 minutes Calderon drove the pickup to the Save-On lot. It appeared to be loaded down and police could see objects inside the camper shell. As Calderon approached the Sav-On, Mejia was seen driving behind in the Oldsmobile, using countersurveillance techniques to ascertain whether anyone was following the truck. Calderon parked the truck in the lot, and about 10 minutes later Esther Consuegra, Juan's wife, got in and drove to a residence in La Puente on Tamar Street using countersurveillance techniques.

When she arrived Juan Consuegra walked toward the pickup from across the street. Francisco Serrato, who owned the residence and the pickup,

---

[1] Esther Consuegra joins only in the first contention.

[2] Calderon challenges the constitutionality of CALJIC No. 2.90, the standard reasonable doubt instruction. The California Supreme Court has consistently upheld the instruction's language, derived from Penal Code section 1096. (*People* v. *Jennings* (1991) 53 Cal.3d 334, 385 [279 Cal.Rptr. 780, 807 P.2d 1009], cert. den. 502 U.S. 969 [116 L.Ed.2d 462, 112 S.Ct. 443]; *People* v. *Smith* (1992) 9 Cal.App.4th 196, 202 [11 Cal.Rptr.2d 645].) Recently, the United States Supreme Court upheld the constitutionality of the instruction. (*Victor* v. *Nebraska* (1994) __ U.S. __, __ [127 L.Ed.2d 583, 597, 114 S.Ct. 1239, 1248].) We are bound by those decisions. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Smith, supra*, 9 Cal.App.4th at p. 202.) Accordingly, we reject Calderon's constitutional challenge to CALJIC No. 2.90.

[3] The police also surveilled on October 30, but their observations were of such minute probative value they do not bear recounting.

opened the garage door and moved a car from the garage to the street. Esther drove the truck into the garage and Serrato shut the door behind her. About 45 minutes later, Esther drove away in a Ford Taurus bearing Michigan plates, which was registered at a fictitious address. Juan left in a BMW.

When Serrato began to back the pickup out of the garage, police detained him. Juan and Esther were detained when they returned within minutes of each other about two hours later. When Juan arrived, he walked into the residence without knocking.

The pickup truck was empty, but a search of the garage yielded 200 kilograms of cocaine. The Taurus had a hidden compartment built into the trunk which had traces of cocaine. Juan was carrying two pagers, one of which was capable of receiving calls nationwide. No contraband was found in his car or at his residence, although he had identification cards with different names on them. A search of the Golden Springs condominium, where Calderon and Mejia were found, revealed 90 kilograms of cocaine and materials for packaging it. The condominium was rented under a false name.

All four appellants were charged with conspiracy to transport cocaine and possess it for sale, transportation of cocaine, and possession for sale of cocaine, apparently at both residences, with enhancements as to each count for quantities in excess of 100 pounds. All four were found guilty of the conspiracy charge on the theory they possessed cocaine for sale, and guilty of one of the possession for sale charges, apparently relating to the location where they were arrested. The jury could not agree on the transportation count.

I

All appellants contend the trial court erred by instructing the jury that possession for sale requires only knowledge that the drugs would be sold eventually by someone else. Any error was harmless.

During deliberations, the jury sent the court a note that read: "Page 53 of the instructions - #5 [¶] 'Such person (possessed) the controlled substance with the specific intent to sell the same' [¶] Does this mean the individual was going to *personally* sell the substance or that they had knowledge that it was going to be sold by someone else?" The instruction to which the jury referred was CALJIC No. 12.01 which, as read to them, provided in relevant part: "Every person who [possesses] for sale a controlled substance, namely cocaine, is guilty of the crime of illegal possession for sale of a controlled substance in violation of Health and Safety Code, section 11351. [¶] In order

to prove such crime, each of the following elements must be proved. . . . Such person [possessed] the controlled substance with the specific intent to sell the same."

After conferring with counsel, the court responded to the jury's question by saying, "Either situation would suffice." How the jury interpreted this answer depends on what the jurors were most concerned about. If they were only concerned about the emphasized word "personally," they may have construed the answer only as meaning the appellants could be convicted if they intended that someone else would sell the cocaine. If the jurors focused on the word "knowledge," they might have concluded they could render a guilty verdict on the charge if they found the appellants merely knew someone else would eventually sell the drugs.

The appellants argue that if the jurors adopted the latter interpretation, the verdict would run afoul of *In re Christopher B.* (1990) 219 Cal.App.3d 455 [268 Cal.Rptr. 8]. ██ ██ There, the Court of Appeal held it was error to convict the minor based upon a finding he knew the drugs would eventually be sold; specific intent to sell was required. (*Id.* at p. 466; see also *People* v. *Newman* (1971) 5 Cal.3d 48, 53-54 [95 Cal.Rptr. 12, 484 P.2d 1356]; *People* v. *Glass* (1975) 44 Cal.App.3d 772, 774 [118 Cal.Rptr. 797].)[4] The Attorney General attempts to distinguish *Christopher B.* on the ground it involved a court trial. But the trial judge's error there was convicting the minor based upon the assumption that knowledge of an ultimate sale was sufficient, the same thing the jury may have inferred here. (*In re Christopher B., supra,* 219 Cal.App.3d at p. 466.)

It is unlikely the jury drew that inference. The emphasis in the question was on whether a defendant must "personally" sell the substance, not whether knowledge was the requisite standard. We can assume the jury, unschooled in the fine distinctions between intent and knowledge, placed its focus where it placed its emphasis.

Any error the trial court committed by infusing the concept of "knowledge" into the definition of intent was harmless. We can make that finding if the jury necessarily resolved the factual issue against the defendant in

---

[4]The court in *Christopher B.* was not called upon to determine whether the perpetrator must intend to sell the drugs personally, and no case since has dealt with that issue. We see no meaningful distinction in culpability between the individual who holds drugs to sell personally and the one who holds them for others to sell. The sections dealing with possession for sale do not specify that the drugs be held for the possessor to sell but only that they be "for sale." (See, e.g., Health & Saf. Code, § 11351.) The requisite mental state is satisfied when the drugs are possessed with the specific intent that they be sold, regardless of whether the possessor intends to sell them personally.

another context. (*People* v. *Reyes* (1992) 2 Cal.App.4th 1598, 1604-1605 [4 Cal.Rptr.2d 48].) In instructing on conspiracy, the court told the jury "the . . . specific intent to commit [possession with intent to sell]" was required. Knowledge was not infused into this instruction and the jury found the defendants guilty. The jury necessarily found the defendants had the requisite specific intent.[5]

## II

 Calderon, Mejia and Juan Consuegra argue there was insufficient evidence of substantial involvement to support the quantity enhancements. Juan Consuegra argues the evidence was insufficient as to the substantive charges as well. We discuss the claims in reverse order.

 When the sufficiency of the evidence is challenged, the court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. [Citation.] Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255], internal quotation marks omitted.)

"In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court 'must . . . presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] The court does not, however, limit its review to the evidence favorable to the respondent. . . . '[O]ur task . . . is twofold. First, we must resolve the issue in the light of the *whole record*—i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements . . . is *substantial*; it is not enough for the respondent simply to point to "some" evidence supporting the finding, for "[n]ot every surface conflict of evidence remains substantial in the light of other facts." ' [Citation.]" (*People* v. *Johnson, supra*, 26 Cal.3d at pp. 576-577.)

---

[5]The appellants allude to *People* v. *Lawson* (1987) 189 Cal.App.3d 741, 754 [234 Cal.Rptr. 557] for the proposition that the proper standard is reversal per se. But in *Lawson* the court found the instruction was tantamount to a directed verdict, which was not the case here. (*Id.* at pp. 751-754.) The *Lawson* court noted that the proper standard in other situations might be whether the error was harmless beyond a reasonable doubt. (*Ibid.*; see also *People* v. *Odle* (1988) 45 Cal.3d 386, 414-415 [247 Cal.Rptr. 137, 754 P.2d 184] [standard used where trial court failed to instruct on an element].) Because we have used a more rigorous standard than beyond a reasonable doubt, we would find that standard was also met.

Juan reasons no rational juror could find more than that he was merely present when some of the criminal activity was going on, and a conviction may not be based upon those facts. (See *People* v. *Jenkins* (1979) 91 Cal.App.3d 579, 584 [154 Cal.Rptr. 309]; *In re Michael T.* (1978) 84 Cal.App.3d 907, 911 [149 Cal.Rptr. 87].) He points out that mere association does not establish a conspiracy, relying primarily on some aged California cases (e.g., *People* v. *Samarjian* (1966) 240 Cal.App.2d 13, 17 [49 Cal.Rptr. 180]; *People* v. *Zoffel* (1939) 35 Cal.App.2d 215, 225 [95 P.2d 160]) and a recent federal case (*U.S.* v. *Penagos* (9th Cir. 1987) 823 F.2d 346, 351). In *Penagos* the court found the evidence was insufficient to link the defendant to a drug conspiracy where he was seen at the scene where drugs were being loaded and accompanied a conspirator on a drug delivery. There was also insufficient evidence to support a conviction of possession for sale. (*Id.* at p. 351.)

The *Penagos* court recognized very little more would be sufficient to sustain the conviction, as have California courts. The agreement in a conspiracy may be shown by circumstantial evidence, including the conduct of the defendants in mutually carrying out an activity which constitutes a crime. (*People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1232 [277 Cal.Rptr. 382]; *People* v. *Lipinski* (1976) 65 Cal.App.3d 566, 575 [135 Cal.Rptr. 451].)

The circumstantial evidence was sufficient here. Juan argues the evidence only showed he was at the Lucky's market and the Tamar Street residence, and that any further inference would be speculation. But to draw the inference Juan simply was at the wrong places at the wrong times, a jury would be required to conclude he coincidentally was at the Lucky's market when Calderon and Mejia came to get the pickup truck and just happened to see them and to shake hands and chat before they left in the truck that just happened to be there. When Calderon delivered the truck to the Sav-On parking lot loaded with "objects,"[6] his wife Esther, of all people, just happened to be there to take it to the Tamar residence. After she drove the

---

[6]The appellants argue that because the jury did not reach a verdict on the transportation charge and found the conspiracy was to possess the cocaine for sale but not to transport it, we may not infer on appeal that the truck was loaded with cocaine. They cite no authority for that proposition. Just as inconsistent verdicts will not usually defeat a conviction (*People* v. *York* (1992) 11 Cal.App.4th 1506, 1510 [15 Cal.Rptr.2d 66]), there is no prohibition against considering all of the evidence in the record to determine the sufficiency of evidence on one count merely because the jury did not reach a unanimous verdict on a count to which the evidence may have related. Although the evidence is sufficient even if we do not assume the packages contained cocaine, a reasonable juror could easily have reached that conclusion, given the cocaine located at the two residences and the extensive countersurveillance techniques used in driving the loaded truck. Some jurors could have been exceptionally diligent about the concept of reasonable doubt and refused to convict because no one "saw" the cocaine being transported. But that does not mean the jury could not consider what was

truck into the garage, Serrato just happened to close the door *behind her.* Juan just happened to show up at the same time as his wife, and just happened to stay there as long as she did, sufficient time for the truck to be unloaded. After they left simultaneously, he just happened to return to the Tamar residence within minutes of her and stride directly into the house as if he were an occupant. Although no contraband was found on Juan's person or in his car or residence, he had the type of pager used by sophisticated, large-scale drug dealers, and possessed false identification.[7]

Reasonable jurors could easily reject such happenstance as unreasonable (see CALJIC Nos. 2.01 and 2.02), and infer he was a coordinator in a sophisticated large scale cocaine operation. ▮ Similarly, the jurors could infer the other participants were "substantially involved in the planning, direction, execution, or financing of the [possession for sale of cocaine]." (Health & Saf. Code, § 11370.4, subd. (a).)[8] The amount of cocaine involved showed this was an extremely large-scale operation. The participants were not peripherally involved. They exhibited surreptitious conduct which showed sophistication in the operation. Juan had a pager which could receive messages nationwide and his conduct suggested he was a coordinator or overseer of activities.

At least one pager was found at the condominium along with packaging supplies. Mejia's jacket was located in a closet there, indicating he was a resident or at least that he had dominion and control over the premises. Calderon worked in tandem with Mejia, driving the loaded pickup truck to the Sav-On lot. Esther drove the loaded pickup to the Tamar residence and was apparently privy to the unloading of cocaine or supplies. In any event, she was allowed in the garage where the cocaine was found, and drove a car with false registration and a hidden cocaine compartment.

Viewed as a whole, the evidence established the appellants were individuals who all played substantial roles in the conspiracy to possess cocaine. The jury finding was proper.

---

probably being transported in deciding the cocaine at the residences was being possessed for sale and all defendants were involved in a conspiracy to do so.

[7]The presence of the pager and false identification adequately distinguish Juan's case from the two he cited at oral argument, *U.S.* v. *Ramos-Rascon* (9th Cir. 1993) 8 F.3d 704 and *U.S.* v. *Bautista-Avila* (9th Cir. 1993) 6 F.3d 1360, both of which are otherwise very similar factually. (See *U.S.* v. *Ramos-Rascon, supra,* 8 F.3d at pp. 707-708 [noting the defendants did not possess any sort of electronic communication devices].)

[8]At the time of this offense, the section provided for a 15-year enhancement if the amount possessed for sale exceeded 100 pounds. (Health & Saf. Code, § 11370.4, subd. (a)(4).) To invoke the enhancement for a conspiracy conviction required a finding of substantial involvement.

## III

 Juan Consuegra urges the court erroneously denied his motion to disclose the identity of an informant. To prevail, the defendant must show a reasonable likelihood the informant would be a material witness on the issue of guilt or innocence. (*In re Robert B.* (1985) 172 Cal.App.3d 763, 769 [218 Cal.Rptr. 337].) All Juan did here was allege the preliminary hearing evidence showed the police set up a surveillance without any indication why they did so, a circumstance Juan asserted established there must have been an informant. He did not put on evidence at the hearing on the motion. This fell far short of the requisite showing.

Nonetheless, we are somewhat troubled that in denying the motion, the court denied Juan's request to be informed whether any informant existed at all. It is possible the court reasoned the request should have been made as a part of discovery, prior to the motion being brought. Our observations about the propriety of denying the motion are not intended to be a comment on whether Juan would have been entitled, upon proper request, to discovery which might help him meet his burden for disclosure.

The judgment is affirmed.

Sills, P. J., and Rylaarsdam, J.,* concurred.

A petition for a rehearing was denied July 21, 1994, and July 22, 1994, and appellants' petition for review by the Supreme Court was denied October 27, 1994.

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.