[No. F021054. Fifth Dist. July 19, 1995.]

THE PEOPLE, Plaintiff and Appellant, v.
JED WILLIAM TEMPLE, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger and Joel Carey, Deputy Attorneys General, for Plaintiff and Appellant.

Todd D. Riebe, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**MARTIN, Acting P. J.**—The People appeal from an order dismissing several drug charges against the defendant, Jed William Temple. The court dismissed the charges on its own motion after granting, in part, Temple's motion to suppress evidence on the ground the police lacked probable cause under the circumstances to search him.

## THE FACTS

In the early morning hours of August 25, 1993, Sergeant Steve Smith of the Madera County Sheriff's Department stopped a van in Oakhurst after noticing it had a broken taillight and was weaving. The driver got out and met Smith at the rear of the vehicle while the four passengers remained inside. When he smelled the odor of burnt marijuana on the driver, Smith decided to search the vehicle and its occupants. He directed the driver to get back in the van while he (Smith) radioed for assistance. According to the officer, "I knew there was marijuana in the vehicle, and I wanted a backup there so that I could individually search everyone in it and the vehicle."

Deputy Lynn Fullmer soon responded to the call and took up a position at the right side of the van as Smith approached the driver's window. Although all five occupants were smoking cigarettes, Smith detected the aroma of raw unburned marijuana from inside the van. He then asked for and received the driver's permission to search the van. He decided however to search the occupants first to avoid being "stiffed" by someone who otherwise might surreptitiously discard drugs during the vehicle search. He instructed Fullmer to search the front passenger, identified as the defendant Temple, while he (Smith) searched the driver. According to Smith, the decision to search Temple was based on "his presence in a vehicle where I smelled marijuana." The acknowledged object of the search was marijuana.

Fullmer began the search by patting down Temple's clothing. He felt and then removed from Temple's right front pocket what he believed to be a pipe for smoking marijuana. A further search uncovered a baggie of suspected marijuana in the same pocket, another in Temple's wallet, and a small packet also in his wallet containing a white powdery substance. Searches of the other occupants were unproductive.

Smith and Fullmer then searched the vehicle and its contents. When they came to assorted items of luggage, they held each up and asked to whom it belonged. In a duffel bag Temple identified as his, they found five more baggies of various sizes also containing what appeared to be marijuana. Underneath the duffel bag they found a box of empty baggies. The rest of the search failed to turn up any additional contraband. Smith then arrested Temple. Subsequent tests on the white powdery substance and on the contents of two of the baggies determined them to be methamphetamine and marijuana, respectively. Based upon his training and experience, Smith expressed an opinion the marijuana had been possessed for sale.

Temple was charged with three offenses stemming from the incident: in count 1 with possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); in count 2 with possession of marijuana for sale (Health & Saf.

Code, § 11359); and in count 3 with transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). He moved pursuant to Penal Code[1] section 1538.5 to suppress the physical evidence found on his person and in his duffel bag, as well as all statements he made during the search, on the ground the officers lacked probable cause to search him.

Following a hearing, the court held the officers had probable cause to search the van and its contents, including the duffel bag. But, relying largely on *U.S.* v. *Soyland* (9th Cir. 1993) 3 F.3d 1312, the court further held events preceding the search of Temple had not established a sufficient connection between him and the odor of marijuana in the van to justify searching him personally. It therefore dismissed count 1.

The court, sitting as the trial court, then held a hearing pursuant to Evidence Code section 402, subdivision (b), to determine the admissibility of Temple's statement admitting ownership of the duffel bag. It held the statement was the product of the prior unlawful search and must therefore be excluded. When the prosecution conceded it had no other evidence of the bag's ownership, the court dismissed counts 2 and 3. The People have appealed from the "judgment" dismissing the three counts.

## DISCUSSION

■ Initially we note the procedure adopted by the lower court—treating the physical evidence as the subject of the suppression motion and Temple's statement as the subject of an evidentiary motion—raises a question as to the scope of this appeal. The appeal was taken under section 1238, subdivision (a)(7),[2] which by its terms is limited to dismissals based upon statutory suppression motions and thus to search and seizure issues. (*People* v. *Campa* (1984) 36 Cal.3d 870, 885, 886 [206 Cal.Rptr. 114, 686 P.2d 634].) Common law motions to suppress statements for reasons unrelated to the lawfulness of a search, such as statements elicited in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], are appropriately the subject of an evidentiary motion under section 402, subdivision (b), of the Evidence Code.[3] As a general rule, such evidentiary rulings are not reviewable pretrial. (*People* v. *Campa, supra,* 36 Cal.3d at p. 885; *People* v. *Gazali* (1991) 228 Cal.App.3d 1417, 1419-1420 [279

---

[1]All future statutory references are to the Penal Code unless otherwise indicated.

[2]Section 1238 provides in pertinent part: "(a) An appeal may be taken by the people from any of the following: [¶] . . . [¶] (7) An order dismissing a case prior to trial made upon motion of the court pursuant to Section 1385 whenever such order is based upon an order granting defendant's motion to return or suppress property or evidence made at a special hearing as provided in this code."

[3]This section provides: "The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall

Cal.Rptr. 547].) Thus the question arises whether the court's dismissal of counts 2 and 3 may be raised by the People in this appeal.

Here, the court granted Temple's motion to suppress his statement on the ground it was the fruit of an unlawful search. Therefore, notwithstanding the procedure utilized to address it, the motion was properly brought under section 1538.5, and the court's ruling, and its dismissal of counts 2 and 3, are within the scope of our review. (*People* v. *Campa, supra,* 36 Cal.3d at p. 885.)

The People contend the search of Temple's person was justified for two reasons. They argue as they did below that the police were entitled to search his clothing as part of a lawful vehicle search. They also claim the search was supported by probable cause to arrest Temple and therefore came within the rule permitting a search incident to a yet-to-be-executed arrest.

In reviewing these contentions, we accept the lower court's factual findings to the extent they are supported by substantial evidence but independently determine as a matter of law whether the search was reasonable. (*People* v. *Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221]; *People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436].) We apply federal constitutional principles to reach our determination. (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744].)

1. *Vehicle Search.*

■ Just as a lawful search of fixed premises extends to the entire area where the thing sought might be located, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*United States* v. *Ross* (1982) 456 U.S. 798, 820-821, 825 [72 L.Ed.2d 572, 590, 594, 102 S.Ct. 2157].) Thus, "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." (*California* v. *Acevedo* (1991) 500 U.S. 565, 580 [114 L.Ed.2d 619, 634, 111 S.Ct. 1982].)

■ Temple concedes the police, at the time they searched him, had probable cause to search the van and its contents. The question before us is whether, as the People assert, the probable cause extended to Temple's clothing, i.e., whether his pockets were in effect "containers" within the scope of a lawful vehicle search. The People have not directed us to any case

hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests."

which supports this novel theory and argue the case upon which the lower court relied, *U.S.* v. *Soyland, supra*, 3 F.3d 1312, is distinguishable if not incorrect.

In *Soyland* the defendant was the passenger in a car stopped at an immigration checkpoint. An agent smelled methamphetamine when the driver got out to open the back. Upon completing his immigration inspection, the agent asked for and received the driver's permission to search the car. The search uncovered three marijuana cigarettes and a pipe containing marijuana residue, all evidently belonging to the driver. The agent then searched the defendant and found methamphetamine. The defendant sought to suppress the methamphetamine on the ground the agent lacked probable cause to search him. The Ninth Circuit agreed: "Soyland, the passenger, was searched without probable cause. There was not a sufficient link between Soyland and the odor of methamphetamine or the marijuana cigarettes, and his 'mere presence' did not give rise to probable cause to arrest and search him." (3 F.3d at p. 1314.)

The case cited by the court in support of this conclusion, *U.S.* v. *Robertson* (9th Cir. 1987) 833 F.2d 777, is one of many which stand for the general proposition that a search warrant will not justify searching a person present at the premises to be searched unless there is probable cause to believe he or she is engaged in criminal activity. In *Ybarra* v. *Illinois* (1979) 444 U.S. 85 [62 L.Ed.2d 238, 100 S.Ct. 338], the Supreme Court explained: "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. [Citation.] Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. [Citations.]" (*Id.* at p. 91 [62 L.Ed.2d at p. 245].)

The People argue this rule should not apply to vehicle searches because "the 'commonality' which pertains to persons in a vehicle is typically much stronger than necessarily obtains among persons present at a residence at the moment a search warrant is executed." The Supreme Court rejected essentially the same argument in *United States* v. *Di Re* (1948) 332 U.S. 581 [92 L.Ed. 210, 68 S.Ct. 222]. On the assumption a search warrant for a residence does not necessarily authorize the search of all persons present there, the court said: "[A]n occupant of a house could be used to conceal . . . contraband on his person quite as readily as can an occupant of a car.

Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?

"We see no ground for expanding the ruling [enunciated in *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790] upholding the warrantless search of an automobile] to justify this arrest and search as incident to the search of a car. We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." (*United States* v. *Di Re*, *supra*, 332 U.S. at p. 587 [92 L.Ed.2d at p. 216].)

In *Ybarra* v. *Illinois*, *supra*, 444 U.S. 85, the court applied the principle enunciated in *Di Re* to reject the argument that police officers armed with a search warrant should be able to search persons present at the place to be searched based only upon a "reasonable suspicion" they are connected with criminal activity or may be concealing or carrying away contraband. (*Id.* at pp. 94-96 [62 L.Ed.2d at pp. 247-248].)

By the same reasoning, we reject the contention, if it is indeed one the People mean to assert, that all passengers in a vehicle are automatically subject to a lawful search simply by virtue of their presence in a vehicle believed to be involved in criminal activity. "[A] search or seizure of a person must be supported by probable cause particularized with respect to that person." (*Ybarra* v. *Illinois*, *supra*, 444 U.S. at p. 91 [62 L.Ed.2d at p. 245].)

The People claim such individualized suspicion attached to all five occupants of the van in this instance because: "(1) they were driving around together at 2:00 in the morning; (2) there was a 'strong odor' of unburnt marijuana coming out the driver's window, suggesting a large amount of the substance; (3) all five occupants were smoking cigarettes inside the van within a few moments after the stop in a rather transparent attempt to camouflage the distinctive odor of the marijuana; and, most importantly, (4) there was no way for Smith to know, at that point, whether the marijuana was on the occupants themselves, or in an area or compartment of the vehicle, or both. In other words, unlike a residential search warrant situation, *at the moment probable cause existed it necessarily encompassed everyone inside the van.*" (Italics in original.)

These arguments are unconvincing. Even ignoring the fact that Sergeant Smith decided to search the van and all its occupants *before* he approached the driver's window, none of these factors served to connect Temple in particular to the odor of marijuana. There is no evidence he was under the influence of the drug, he made no furtive movements suggestive of an attempt to conceal contraband nor did he say anything of a particularly suspicious nature. By his own admission, Smith's decision to search Temple was based entirely on the fact Temple was present in the van. His "mere presence" however was not sufficient to establish probable cause to search him. (*Ybarra* v. *Illinois*, *supra*, 444 U.S. at p. 91 [62 L.Ed.2d at p. 245].)

Nor can Temple's clothing be thought of as separate from his person and thus, like his duffel bag, among the contents of the van. In *People* v. *Reyes* (1990) 223 Cal.App.3d 1218 [273 Cal.Rptr. 61], this court considered whether a search warrant for a residence extends to clothing found there. In *Reyes*, police officers executing a warrant discovered the defendant in the shower and ordered him to get out. As he did, he reached for his shirt and pants nearby. The officers seized the clothing and, upon searching it, found contraband. The defendant sought to suppress the evidence on the ground it was the product of a personal search, not a premises search, and was not authorized by the warrant. Although we did not attempt to define the boundary between personal and premises searches, we concluded after reviewing decisions from other jurisdictions, the search in that instance was clearly personal. (*Id.* at pp. 1222-1227.) For the same reasons, that conclusion is even more compelling here. Temple's pockets were part of his person and therefore were not "containers" within the scope of the vehicle search.

### 2. *Search Incident to Arrest.*

■ The People's remaining contention requires little additional discussion. They argue that, at the time Temple was searched, probable cause existed to arrest him for possession of a controlled substance based upon the aroma of unburned marijuana coming from the van. Consequently, they reason the search was justified as incident to the arrest, noting such a search may precede the arrest itself as long as the two are reasonably contemporaneous. (*Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 110 [65 L.Ed.2d 633, 645, 100 S.Ct. 2556]; *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1189 [265 Cal.Rptr. 507].)

Not so. If the officers lacked probable cause to search Temple, they also lacked probable cause to arrest him. "There is no discernible distinction between probable cause to believe a person is carrying narcotics and probable cause to arrest for carrying narcotics as far as the consequence here is concerned. . . . In simple terms, if you have probable cause to believe a

suspect has illegal narcotics in his pocket, you necessarily have an honest and strong suspicion the person searched is guilty of a crime." (*People* v. *Gorrostieta* (1993) 19 Cal.App.4th 71, 84 [23 Cal.Rptr.2d 92].) The converse is equally true here where, for the reasons set out above, the officers lacked any particularized suspicion Temple was engaged in criminal activity.

The order dismissing the charges against Temple is affirmed.

Stone (W. A.), J., concurred.

**STONE (W. A.), J.,** Concurring.—Although my heart agrees with the dissent, my head, and thus my signature, dictate otherwise. I write briefly to explain why in my opinion the dissent erroneously relies on the testimony of Officer Smith to establish suspicious circumstances in order to take the case out of the "mere presence" holding of *U.S.* v. *Soyland* (9th Cir. 1993) 3 F.3d 1312, 1314.

The dissent emphasizes Smith's testimony "that all the occupants of the van 'lit up cigarettes when [Smith] approached the vehicle.'" That testimony, however, occurred at the preliminary hearing. At the preliminary hearing the defense did not make a motion to suppress, nor did the magistrate proceed as if such a motion had been made. Defense counsel did not argue that any evidence should have been suppressed or that any evidence was inadmissible. Rather, the only issue raised at the conclusion of the preliminary hearing was whether the marijuana discovered was possessed for the purpose of sale. The prosecution contended possession for sale was established by the opinion of Officer Smith, and he based his opinion on the five baggies in which the marijuana was found. Defense counsel contended the use of baggies is not sufficient to support a finding that the substance was possessed for sale. The magistrate bound the case over as charged, noting, "It's a good argument for the jury but . . . ."

Therefore, the magistrate did not make findings, express or implied, nor was he required to make findings, regarding the legality of the search and seizure of the contraband.

After arraignment in the superior court, defendant made his motion to suppress. The motion was *not* the renewal of a motion to suppress made at the preliminary hearing. Rather, it was an initial motion to suppress in which the judge was to "receive evidence on any issue of fact necessary to determine the motion." (Pen. Code, § 1538.5, subd. (c).) In other words, the superior court was to determine the legality of the search and seizure based on the evidence produced in that court at that hearing. Accordingly, in this instance the prosecution presented evidence in the superior court that encompassed the entire transaction, from the initial stop until the arrest.

"Subdivision (i) of section 1538.5 unambiguously provides that in cases such as the present one, in which no suppression motion was made at the preliminary hearing, the defendant has the right to 'fully litigate' the validity of a search or seizure. . . . In such cases, the determination of the validity of the search or seizure is made 'on the basis of the evidence presented at a special hearing' in the superior court. . . . The statute makes no provision for the admission in evidence of the preliminary hearing transcript in such a case. As we have recounted, the preliminary hearing transcript is not properly considered by the superior court at such a de novo hearing unless the transcript (or portions of it) are formally received in evidence pursuant to stipulation or appropriate exception to the hearsay rule. (*People* v. *Cagle* [1971] 21 Cal.App.3d [57] at p. 60 [90 Cal.Rptr. 348].)

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Accordingly, we consider only the evidence adduced at the hearing of the 1538.5 motion in the superior court. (*Wilder* v. *Superior Court* [1979] 92 Cal.App.3d [90] at p. 94 [154 Cal.Rptr. 494].)" (*People* v. *Neighbours* (1990) 223 Cal.App.3d 1115, 1119-1120 [273 Cal.Rptr. 32].)

The *only* testimony at the motion hearing in the superior court regarding cigarette smoking by the occupants of the vehicle occurred on cross-examination of Officer Smith:

"Q Now, the individuals in the car were smoking cigarettes, were they not?

"A Yes, every one of them had a cigarette lit.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Q Now, you still smelled that [marijuana odor] over and above the smell of cigarettes?

"A Yes, I did."

Nothing in Officer Smith's testimony at the suppression hearing indicates when the occupants began to smoke cigarettes or whether they all commenced smoking at about the same time. The record does not reveal whether any or all of the occupants were smoking cigarettes when Smith made the initial stop.

Thus, from the only evidence which both the superior court and we may properly consider, I conclude the record lacks any evidence of a gesture that would suggest criminal conduct or an attempt to conceal contraband.

At the commencement of the hearing on the motion to suppress, the court stated, "The Court has read and considered the motion and the response and

has read the preliminary hearing transcript." However, by those words, the preliminary hearing transcript did not become evidence. There is no hint of a stipulation by the parties that the transcript be evidence.

I conclude the judgment of the superior court must be affirmed.

**DIBIASO, J.**—I dissent. I agree that a person's "mere presence" at a scene of suspected criminal activity does not give rise to probable cause to search him or her. (*U.S.* v. *Soyland* (9th Cir. 1993) 3 F.3d 1312, 1314.) I also agree that probable cause to search a bystander found at such a location must be "particularized with respect to that person." (*U.S.* v. *Robertson* (9th Cir. 1987) 833 F.2d 777, 783.) However, as I read *Ybarra* v. *Illinois* (1979) 444 U.S. 85, 91 [62 L.Ed.2d 238, 245, 100 S.Ct. 338], probable cause will exist where the subject makes "gestures indicative of criminal conduct," or "movements that might suggest an attempt to conceal contraband." (*Ibid.*)

Sergeant Smith testified that all the occupants of the van "lit up cigarettes when [Smith] approached the vehicle" after he had completed his call for backup assistance. Smith said he smelled, as he walked up to the driver's side of the van, a "strong odor" of raw marijuana emanating from inside the van. He also said there was a "lot of smoke" in the van from the several burning cigarettes.[1] In my view these facts generated, as a matter of law, probable cause to believe that all the occupants, including Temple, knew there was marijuana in the van or on the person of one or more of the occupants, or both, and intentionally tried to hastily mask the smell of the drug with cigarette aroma in order to attempt to evade detection. After all, if Smith could smell the raw marijuana the van's occupants undoubtedly could also. While there might be an innocent reason why *all five* people in a vehicle reeking of narcotics would, essentially simultaneously, light and start puffing on cigarettes as a police officer was approaching the vehicle, the inference is legitimate and compelling that these unified actions were an "attempt to conceal contraband." (*Ybarra* v. *Illinois*, *supra*, 444 U.S. at p. 91 [62 L.Ed.2d at p. 245].)

Smith therefore had probable cause to search all five occupants, as well as the van, in order to determine whether in fact contraband was concealed in

---

[1] The two police officers were the only witnesses called at both the preliminary hearing and the suppression hearing. There is nothing in the record which suggests that the trial court disbelieved or rejected any part of the testimony given at either proceeding by the officers. If anything, the record discloses that the trial court accepted as true all of the testimony of the officers but ruled that the facts presented did not as a matter of law give rise to the requisite probable cause.

the vehicle or on the person of any of the occupants.[2] I would reverse the trial court's order.[3]

It is obvious I do not agree with concurring Justice Stone that the preliminary hearing transcript was not evidence for purposes of the suppression hearing. In addition to the trial court's statement, made in the presence of counsel and unchallenged by either, that it had read the preliminary hearing transcript, the parties' moving papers disclose reliance on testimony contained in that transcript. The People expressly stated that their opposition to the motion to suppress was based in part upon the transcript, and the defendant's argument in his points and authorities in support of the motion —as distinguished from his introductory recitation in those points and authorities of what he believed the evidence would show—cites, by page number, specific testimony found in the preliminary hearing transcript. In my estimation these facts justify an inference the transcript was "properly before the [superior] court and that the judge had access to and considered the transcript." (*People* v. *Cagle* (1971) 21 Cal.App.3d 57, 61 [98 Cal.Rptr. 348].)

Although the subject is entirely irrelevant to this appeal, I cannot help but wonder aloud here why the People did not attempt to establish that the discovery of the marijuana and methamphetamine on Temple's person was "inevitable." (See, e.g., *Nix* v. *Williams* (1984) 467 U.S. 431 [81 L.Ed.2d 377, 104 S.Ct. 2501]; *People* v. *Clark* (1993) 5 Cal.4th 950, 993-994 [22 Cal.Rptr.2d 689, 857 P.2d 1099].) Regardless of whether Smith had probable cause to search Temple before searching the duffel bag, it would seem that the discovery of the marijuana in the duffel bag, in conjunction with Smith's

---

[2] The arguments made by the People in the trial court and on appeal are sufficient in my view to raise this theory in support of the legality of the search, although in neither instance is it fully developed. (See 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Exclusion of Illegally Obtained Evidence, § 2270, pp. 2667-2668.) In addition, Smith's testimony does support a conclusion that the concerted smoking by the van's occupants played some role in his decision to search the vehicle.

[3] I also believe the facts—particularly the open nature of a van and the pervasiveness of the telltale odor—furnished Smith with probable cause to arrest all five occupants of the van at the moment he stood at the driver's window of the van. At that point, Smith would have had a reason to believe that Temple, as well as the others, "had committed" or "was committing" an offense under state law (*Ybarra* v. *Illinois, supra,* 444 U.S. at p. 91 [62 L.Ed.2d at p. 245]), to wit, possession (Health & Saf. Code, § 11357) or transportation of marijuana (Health & Saf. Code, § 11360), based upon principles of constructive possession. (See *People* v. *Johnson* (1984) 158 Cal.App.3d 850, 854 [204 Cal.Rptr. 877]; *People* v. *Cirilli* (1968) 265 Cal.App.2d 607, 612 [71 Cal.Rptr. 604]; *People* v. *Torres* (1950) 98 Cal.App.2d 189, 193 [219 P.2d 480].) A search of Temple incident to such arrest was thus proper, even if it preceded the arrest. (See *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1189 [265 Cal.Rptr. 507]; *People* v. *Lee* (1987) 194 Cal.App.3d 975, 984 [240 Cal.Rptr. 32].) In practical effect, the majority opinion holds that evidence which is sufficient to support a verdict of guilty, based upon the concept of constructive possession, is insufficient to support probable cause to arrest or search.

observation of the earlier smoking frenzy, would have furnished Smith with probable cause to arrest and search all five occupants of the van.[4] (See *People* v. *Gorrostieta* (1993) 19 Cal.App.4th 71, 83 [23 Cal.Rptr.2d 92].) The relevant offense with respect to Temple would have been possession (Health & Saf. Code, § 11357) or transportation of marijuana (Health & Saf. Code, § 11360) based upon constructive possession (See *People* v. *Cirilli, supra,* 265 Cal.App.2d at p. 612), or at the very minimum, conspiracy to possess marijuana for sale (Pen. Code, §§ 182, 184; Health & Saf. Code, § 11359; see *People* v. *Consuegra* (1994) 26 Cal.App.4th 1726, 1734 [32 Cal.Rptr.2d 288]; *People* v. *Towery* (1985) 174 Cal.App.3d 1114, 1131-1132 [220 Cal.Rptr. 475]; see also *U.S.* v. *Penagos* (9th Cir. 1987) 823 F.2d 346, 348; *U.S.* v. *Taylor* (9th Cir. 1986) 802 F.2d 1108, 1116). A search of Temple incident to such an arrest, which would necessarily have uncovered the contraband concealed on his person, would have been proper. (*People* v. *Gorrostieta, supra,* 19 Cal.App.4th at p. 83; *People* v. *Gonzales, supra,* 216 Cal.App.3d 1185, 1189.)

With respect to conspiracy to possess marijuana for sale, I believe the rational inferences which flow from (1) the presence of a saleable amount of marijuana in a duffel bag behind the driver's seat of the van in which Temple was a passenger, (2) the powerful odor of the narcotic emanating from inside the van, and (3) the occupants' concerted action in lighting up and smoking cigarettes as Smith approached the van, would have led a person of " 'ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion' " (*People* v. *Gonzales, supra,* 216 Cal.App.3d at p. 1189) of both the existence of a conspiracy among the occupants of the van to possess marijuana for sale and Temple's participation in it. (See *People* v. *Consuegra, supra,* 26 Cal.App.4th at p. 1734; *People* v. *Towery, supra,* 174 Cal.App.3d at pp. 1131-1132; see also *U.S.* v. *Penagos, supra,* 823 F.2d at p. 348.) However, because the People at the suppression hearing did not rely upon this theory to justify the search, the trial court had no basis upon which to consider it and neither can we. (4 Witkin & Epstein, Cal. Criminal Law, *supra,* Exclusion of Illegally Obtained Evidence, § 2270, pp. 2667-2668.)

A petition for a rehearing was denied August 9, 1995, and appellant's petition for review by the Supreme Court was denied October 19, 1995.

---

[4]As stated in the majority opinion, defendant conceded in the trial court, as he does on appeal, that there existed probable cause to conduct the search of the vehicle which turned up the marijuana in the duffel bag.